## MITZ, JR. *v.* STATE OF INDIANA.

[No. 29,087. Filed October 7, 1954.]

*Jenkins & Fiely*, of Portland, and *Richard Salb*, of Indianapolis (of counsel), for appellant.

*Edwin K. Steers*, Attorney General, and *Robert L. Sheaffer* and *Owen S. Boling*, Deputy Attorneys General, for appellee.

FLANAGAN, C. J.—This is an appeal from the judgment of the trial court denying appellant's petition for a writ of *coram nobis*.

Appellant contends that the two pauper attorneys appointed by the court to represent him prior to his plea of guilty to auto banditry did not competently represent him because (1) they did not spend sufficient time in consultation with him; (2) they did not make sufficient independent investigation of the alleged

crime; (3) they did not advise him of his constitutional rights in these particulars: (a) that the charge contained an includable lesser offense, (b) his right to appeal as a pauper, (c) his right to trial by jury, (d) to be heard by himself and counsel, (e) his right to demand the nature and cause of the accusation against him and to have a copy thereof, (f) his right to meet witnesses face to face, (g) his right to have compulsory process for obtaining witnesses in his favor, and (h) the law of reasonable doubt or burden of proof; (4) the court, itself, did not see that he was advised of his constitutional rights; and (5) evidence of guilt of other crimes was admitted in the hearing on his petition for a writ of error *coram nobis*.

The record discloses that on or about the 19th day of March, 1952, appellant was arrested and subsequently charged with the crime of robbery and auto banditry. On April 18, 1952, he was arraigned. At this arraignment the court appointed two pauper attorneys to represent appellant. They talked with him at that time for a few minutes, and one of them talked with him later at the jail. Appellant told the attorney that he was guilty, had given a statement, wanted to get on his way, and for the attorney to work out the "best deal." Little was said about the facts in the case. Appellant asked the attorney to write to his wife, which the attorney did. The actual periods of conversation between the pauper attorneys and appellant took about ten minutes.

On April 25, 1952, a plea of guilty was entered on the count of auto banditry, that being the lesser offense, and appellant was given a ten-year sentence.

The record at the time of entry of the plea of guilty disclosed that appellant stated that he desired to withdraw his plea of not guilty and plead guilty, that he

wished to waive his right to a jury and have the case disposed of that morning, and that he knew the penalty for auto banditry.

The statement which appellant had given to the police prior to the appointment of the pauper attorneys, and which appellant does not contend was not given voluntarily and of his own free will, contains the following:

"Q. What is your name?

"A. John Mitz, Jr.

"Q. How old are you?

"A. I am 27 years old.

"Q. Where do you live?

"A. R. R. 9, Box 428, Indianapolis, Indiana.

"Q. Do you know why you have been arrested?

"A. For investigation of a robbery of the Dady Super Market at 1802 West Morris Street.

"Q. Are you guilty of this robbery?

"A. Yes, sir.

"Q. We wish to advise you that you do not have to make a statement and any statements made by you may be used in court against you. Do you still wish to make a statement?

"A. Yes, sir.

"Q. Will you tell us in your own words about this robbery and all other robberies that you have been in on?

"A. Yes, sir. (We omit statements as to other alleged robberies.) The next one was the Dady Super Market at 1802 West Morris Street. This was on August 28th, 1951. I don't remember the time of this but it was after dark. I was driving my 1940 Nash and I waited in the car which I had parked about a block east of the store and on a side street and Clyde Small and Avery Dillinger walked to the store. They came back to the car and had a hundred and forty-nine dollars which they had taken from the store. We split this money three ways and there was two dollars extra and we matched for this money and I lost. My share was forty-nine dollars."

On the same date Dillinger entered a plea of guilty and was sentenced to ten years. It developed at the hearing that Small was already in the Reformatory.

The situation now seems to us quite clear. Appellant had committed the crime with which he was charged, he had furnished details concerning it, and wished to plead guilty. He knew he was entitled to a jury trial and knew the penalty for the crime.

We are unable to discover wherein detailed recitation to appellant of all rights of a defendant in a criminal case could help him, or wherein not detailing such rights could harm him.

Let us examine appellant's contentions one by one.

(1) Appellant says his attorneys did not spend sufficient time in consultation with him. True, a total of only ten minutes seems very little. But what more could they learn from him in a longer time? He says he is guilty, he has made a statement, look at it and you get the detailed facts. What more is there to learn?

(2) Appellant says his attorneys did not make a sufficient independent investigation. What were they to investigate? His statement to the police, certainly. Then what? He says he did it. Here are the details. No one ever claimed appellant lied about being guilty or was incompetent mentally. What, then, was a further independent investigation to discover which could be helpful to appellant?

(3) Appellant says his attorneys did not advise him of his constitutional rights in these particulars:

a. That the charge included a lesser offense. An includable lesser offense only becomes important where there is a question as to whether the facts clearly make the crime charged. Here they clearly do.

b. His right to appeal as a pauper. What good would this information be? Where the facts of appellant's guilt were clear according to appellant's statement, and he wished to plead guilty, what would there be to appeal from?

c. His right to a jury trial. He was informed as to this right and personally waived it.

d. To be heard by himself and counsel. He was.

e. His right to demand the nature and cause of the accusation, etc. With this information he was furnished.

f. His right to meet witnesses face to face. This right he had. The young lady who was held up in Dady's store testified and was subject to cross-examination. So did one of his accomplices. What other witnesses did appellant wish to meet face to face? There were none, and, besides, he was not being merely accused. He admitted his guilt. Wherein was he harmed?

g. His right to have compulsory process for obtaining witnesses. What witnesses? Nothing in the record indicates there were any witnesses in the world that appellant wanted or who could have been useful to him.

h. The law of reasonable doubt or burden of proof. Wherein could such information be of any use to appellant? There was no reasonable doubt involved nor any question of burden of proof. The man admits he is guilty.

(4) Appellant says the court, itself, did not inform him as to his constitutional rights. Again, what constitutional rights? Appellant does not point out, nor do we discover, any constitutional rights of which appellant could have availed himself that were not made clear to him.

(5) Appellant claims error in the admission of

evidence of other crimes in the hearing on the petition for writ of error *coram nobis*. Inasmuch as the guilt or innocence of appellant was not in issue, the usual objection, that evidence of the commission of one crime is not competent to show the commission of another, is not applicable. Here the evidence was proper on the issue that appellant had some knowledge of court-room procedure. In addition, the appellant had taken the stand, and his cross-examination as to former convictions was proper as affecting his credibility as a witness. *Metzger* v. *State* (1938), 214 Ind. 113, 13 N. E. 2d 519.

We find no merit to any of appellant's contentions.

The factual situation here is entirely different from that in the case of *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848.

Judgment affirmed.

Bobbitt, Draper, and Emmert, JJ., concur.

Gilkison, J., dissents with opinion.

### DISSENTING OPINION

GILKISON, J.—Dissenting.

I am unable to agree with the majority opinion for the following reasons:

As shown by the opinion appellant was adjudged guilty of auto banditry and sentenced to prison for ten years.

The opinion further states that the pauper attorneys appointed by the court consulted with appellant, but, quoting from the opinion:

"The actual periods of conversation between the pauper attorneys and appellant took about ten minutes."

The appellant was charged with robbery and auto

banditry, the minimum penalty for the latter is ten years in prison. Sec. 10-4710, Burns' 1942 Repl.

I do not think the lawyer has ever lived who could discharge his duties to a client so charged, by consulting with him for only ten minutes. The ten minute consultation with their client by the pauper attorneys conclusively shows that they were rendering merely perfunctory service, attempting to supply the requirements of due process but doing nothing for their client whatever. This is the shortest period of consultation, to be found in the books. The opinion attempts to excuse this excessive lethargy thus:

> "True a total of only ten minutes seems very little. But what more could they learn from him in a longer time? He says he is guilty, he has made a statement, look at it and you get the detailed facts. What more is there to learn?"

The opinion seems to admit that appellant's guilt or innocence was not in issue in the case, and with this position I agree. But the opinion at least eight times states that appellant is guilty, and these statements are made as an excuse for the violation of fundamental rights. I am unable to agree that the guilt of the appellant, either assumed or real, is an excuse or justification for not granting him "due course" and "due process" of law. See dissents: *Schmittler* v. *State* (1950), 228 Ind. 450, 469 to 486, 93 N. E. 2d 184; *State* v. *Lindsey and Carroll* (1952), 231 Ind. 126, 134, 106 N. E. 2d 230. See Instructive Comment: 26 Ind. Law Journal, pp. 535 et seq; 26 Notre D. L. J. 118 to 122; *Abraham* v. *State* (1950), 228 Ind. 179, 184, 91 N. E. 2d 358.

I do not think it matters in the least whether an explanation of all his legal rights would have helped him, nor whether we are able to discover that it would or would not have done so. The only question for us

to determine is: Were these rights explained to him? If they were not explained to him he has not had due process. Appellant had no burden to show that the explanation of these rights would have helped him, nor that the failure to make such explanation could have harmed him.

The purpose of *coram nobis* is neither to help nor harm a defendant, but is to afford him due course of law agreeable with the Constitution of Indiana, Art. 1, Secs. 12 and 13, and due process of law agreeable with Sec. 1, of the Fourteenth Amendment. When a defendant prevails in a *coram nobis* case, he is allowed a trial and this may result either in his conviction or acquittal.

I would reverse this judgment, that the appellant may have the due process vouchsafed to everyone who is charged with crime.

NOTE.—Reported in 121 N. E. 2d 874.