DOROTHY ASHTON *v.* WILLIAM ANDERSON.

[No. 272S22.  Filed February 28, 1972.]

*Berry, Kincade and Miller,* of Terre Haute, for appellant.

*Dix, Patrick, Ratcliffe & Adamson,* of Terre Haute, *Jack N. Cochran,* of Sullivan, for appellee.

HUNTER, J.—Petitioner, William Anderson, is before this Court on an Application for Transfer seeking review of the Appellate Court's opinion in *Ashton* v. *Anderson* (1971), 265 N. E. 2d 719. The Appellate Court held that it was error for the trial court to disallow a question on cross examination concerning prior criminal convictions for the purpose of impeaching the credibility of the witness. The Appellate Court reversed the trial court's judgment and ordered that the appellant be granted a new trial.

At trial, counsel for Dorothy Ashton, plaintiff-appellant, attempted to cross examine one Lewis Ross, witness for defendant-appellee, as follows:

"Q.  Have you ever been arrested before, Mr. Ross?

[Counsel for defendant-appellee:]

"Your honor, I am going to object to this. That has nothing to do with this. I don't know what the answer is but it is completely immaterial.

[The Court:]

"Sustained.

"Q.  Let me ask you this, have you ever plead (sic) guilty or been convicted of any criminal offenses before?

[Counsel for defendant-appellee:]

"I am going to object to that question for exactly the same reason, it doesn't have anything to do with the issues here.

[Counsel for plaintiff-appellant:]

"Your Honor—

[The Court:]

"I don't see the materiality.

[Counsel for plaintiff-appellant:]

"Why, Your Honor, I feel I have a right to ask that question whatever the answer might be, to ask him if he has been arrested or plead (sic) guilty or been convicted of any criminal offenses before. I think that is within the law, I can ask him that question, maybe he can't (sic) but if he has that can be taken into consideration on the reliability of the witness' testimony.

[The Court]

"Objection sustained."

It is well established law that the first question relating to prior arrests was improper. See, *Hensley* v. *State* (1971), 256 Ind. 258, 268 N. E. 2d 90; *Petro* v. *State* (1933), 204 Ind. 401, 184 N. E. 710. It is the objection to the latter question which was found by the Appellate Court to have been erroneously sustained. Thus the question before this Court is whether the trial court committed reversible error in refusing to allow counsel for appellant to question a witness on cross examination in regard to prior convictions for *any*

*criminal offense* for the purpose of impeaching the witness' credibility.

The decision of the Appellate Court is based on the holding in *McMullen* v. *Cannon* (1958), 129 Ind. App. 11, 150 N. E. 2d 765. In *McMullen,* the plaintiff, after testifying in his own behalf, was asked on cross examination whether he had been arrested and convicted of operating a motor vehicle while under the influence of intoxicating liquor. The question was objected to on the ground that it was wholly immaterial to the issues in the case. Counsel for the defendant replied that the question went solely to the plaintiff's credibility. The trial court sustained the objection. In reversing, the Appellate Court stated:

"In this state the rule is deeply entrenched in the case law that a witness, including a party to the action who takes the stand as a witness in his own behalf, may be required on cross-examination, as affecting his credibility, to answer as to previous convictions, whether such convictions were of felonies or misdemeanors. Among others which could be cited, see the following: *Niemeyer et al.* v. *McCarty et al.* (1943), 221 Ind. 688, 701, 51 N. E. 2d 365; *Fritch* v. *State* (1927), 199 Ind. 89, 155 N. E. 257; *Parker* v. *State* (1894), 136 Ind. 284, 288, 35 N. E. 1105; *Vancleave* v. *State* (1898), 150 Ind. 273, 49 N. E. 1060; *Dotterer* v. *State* (1909), 172 Ind. 357, 365, 88 N. E. 689; *Neal* v. *State* (1912), 178 Ind. 154, 158, 98 N. E. 872; *Pierson* v. *State* (1919), 188 Ind. 239, 244, 245, 123 N. E. 118; *Bolden* v. *State* (1927), 199 Ind. 160, 163, 155 N. E. 824; *Way* v. *State* (1946), 224 Ind. 280, 284, 66 N. E. 2d 608; *Chambers* v. *State* (1946), 232 Ind. 349, 111 N. E. 2d 816; *Mitz, Jr.* v. *State* (1954) 233 Ind. 537, 543, 121 N. E. 2d 874.

"In the *Neal* v. *State* case, *supra,* it was held that it rested within the sound discretion of the court as to whether the matter inquired about tended to affect the credibility of the witness. Such, also, was the practical holding of the court in *City of South Bend* v. *Hardy* (1884), 98 Ind. 577, 580. However, in the *Niemeyer et al.* v. *McCarty* case, *supra,* the court held that 'the statement that "the extent to which such cross-examination may be carried is within the sound discretion of the court" must not be construed as authorizing the entire exclusion of such testimony in the trial court's discretion, and the cases referred to do not so hold.'

"It would seem, therefore, that our Supreme Court is committed to the doctrine that, without reference to the materiality or relevancy of the subject matter of the offense of which the witness was convicted to the issues of the particular case being tried, the witness should be required to answer as to previous convictions as affecting his credibility. Notwithstanding that we may consider, under the circumstances of this case in which there is no issue of intoxication or operating a motor vehicle while under the influence of intoxicating liquor nor any direct examination on any such matter, that the trial court, upon the whole record and evidence before him, acted soundly and did not abuse his discretion in sustaining the objection to the said question put to the witness, we, nevertheless, consider that we are bound by the said holdings of our Supreme Court." 129 Ind. App. at 12-14, 150 N. E. 2d at 766-767.

It is well recognized that a witness may be required on cross examination to answer as to prior convictions for the purpose of impeaching his credibility. Furthermore, it is unimportant whether the criminal convictions are of felonies or misdemeanors. See, *McMullen* v. *Cannon, supra,* and cases cited therein. However, this Court has never specifically decided whether a witness should be required to answer as to *any* prior conviction for *any* criminal offense without regard to the nature of the offense and its tendency to reflect on the credibility of the witness.

An examination of our prior case law in this area does not provide us with a definite answer as to what the rule should be. In *Glenn* v. *Clore* (1873), 42 Ind. 60, the Court, in holding it was error to admit in evidence the record of a conviction of the crime of assault and battery for the purpose of affecting the credibility of the witness, stated:

"We know of no law by which this evidence could legally be admitted. It is provided by sec. 243 of the civil code, that any fact which might theretofore have been shown to render a witness incompetent, may be thereafter shown to affect his credibility. To determine what crimes rendered a witness incompetent at the date of the civil code, we must refer to the statute previously in force, which is sec. 79, p. 999, Revised Statutes of 1843, and which declared that any

person who might thereafter be duly convicted of the crime of treason, murder, rape, arson, burglary, robbery, man-stealing, forgery or wilful and corrupt perjury, should ever after such conviction be deemed infamous, and, among other disabilities, be incapable of giving evidence in any court of justice. It will be seen that neither the crime with which the witness was charged nor that of which he was found guilty rendered him incompetent as a witness prior to the code, and could not therefore be shown to affect his credibility under the code." 42 Ind. at 61-62.

The statute relating to impeachment, referred to in *Glenn* v. *Clore, supra,* is IC 1971, 34-1-14-14, (Ind. Ann. Stat. § 2-1725 [1968 Repl.]). In *Niemeyer* v. *McCarty* (1943), 221 Ind. 688, 51 N. E. 2d 365, the Court construed this statute similarly to the court in *Glenn* v. *Clore, supra.*

"The court sustained an objection to the introduction in evidence of certain records of a contempt proceeding in which it is said that the plaintiff was convicted of contempt of court for perjury. This evidence was offered for the purpose of affecting the credibility of the plaintiff as a witness. It is well settled that ordinarily a witness cannot be impeached by proof of particular extraneous acts of misconduct. Section 2-1725, Burns' 1933, § 312, Baldwin's 1934, Acts 1881 (Sp. Sess.), ch. 38, § 284, p. 240, provides: 'Any fact which might, heretofore, be shown to render a witness incompetent may, be hereafter shown to affect his credibility.' *This has reference to § 79, p. 999, Rev. St. 1843, which defined infamous crimes and rendered those convicted of such incompetent as witnesses.* See *Dotterer* v. *State* (1909), 172 Ind. 357, 88 N. E. 689, 30 L.R.A. (N.S.) 846. Among the crimes defined was 'wilful and corrupt perjury.' In this State all crimes are statutory, and all who are accused of crime are entitled to a trial by jury, and there can be no conviction of crime except by a jury unless a jury is waived. Contempt of court is not a crime, although the same act may be a crime and may also be a contempt of court. It follows that the statute quoted above furnishes no basis for the admission of the record of the contempt proceedings even if it is a final judgment which is questioned. There was no error in excluding this record." 221 Ind. at 692, 51 N. E. 2d at 367. (our emphasis)

Thus it is quite clear that IC 1971, 34-1-14-14, (Ind. Ann. Stat. § 2-1725 [1968 Repl.]), permits, for purposes of impeachment, the introduction of the record of convictions for the crimes of treason, murder, rape, arson, burglary, robbery, kidnapping, forgery and wilful and corrupt perjury. Furthermore, the trial court cannot exclude such evidence as it is bound by this Court's interpretation of the above statute.

Another rule of impeachment by showing the prior conviction of a crime was recognized, quite possibly for the first time in this State, in the case of *Parker* v. *State* (1894), 136 Ind. 284, 35 N. E. 1105. The State, on cross examination, was permitted to question the defendants as to *certain arrests and prosecutions,* occurring in the past, for the purpose of discrediting their testimony. In holding that the questioning was proper, the *Parker* Court stated:

> "The testimony of an accused who testifies in his own behalf, should be subject to the tests applied to the testimony of any other witnesses. It is not to be supposed that the testimony of a witness who is morally depraved and an habitual law-breaker will, as a rule, be given the same credit as a witness who is of known moral character.
>
> In the case of *Bessette* v. *State,* 101 Ind. 85, it was said by this court: 'It is proper, within the bounds of propriety, to be controlled by the trial court, that the character and antecedents of a witness may be subject to a test on cross-examination, and that questions which go to exhibit his motives and interest as a witness, as well as those tending to show his character and antecedents, should be allowed.'
>
> The extent to which such cross-examination shall be allowed is largely in the discretion of the trial court. *City of South Bend* v. *Hardy,* 98 Ind. 577; *Conrad* v. *State,* 132 Ind. 254; *People* v. *Clark,* 102 N.Y. 735; *People* v. *Cummins,* 47 Mich. 334; *Ruloff* v. *People,* 45 N.Y. 213; *People* v. *Court of Oyer and Terminer,* 83 N.Y. 436; *People* v. *Hooghkerk,* 96 N.Y. 149." 136 Ind. at 288-289, 35 N. E. at 1107.

The decision does not reveal the nature of the crimes for which the defendants were prosecuted, but it is clear that the

holding was not based upon the fact that the crimes were infamous. The Court, instead, relied on *Bessette* v. *State* (1885), 101 Ind. 85. *Bessette,* however, did not involve the issue of the propriety of questioning as to prior criminal convictions for the purpose of impeaching credibility. The Court in *Parker* also stated that the extent to which such cross examination shall be allowed is largely within the discretion of the trial court. In support of this proposition, only two cases from this jurisdiction were cited, *City of South Bend* v. *Hardy* (1884), 98 Ind. 577, and *Conrad* v. *State* (1892), 132 Ind. 254, 31 N. E. 805, neither of which held that the trial court had any discretion to permit questioning as to prior criminal convictions for purposes of impeachment. Thus it seems reasonable to conclude that the *Parker* decision established the rule that prior criminal convictions could be inquired of on cross examination to show the depraved moral character of the witness as affecting his credibility.

In *Dotterer* v. *State* (1909), 172 Ind. 357, 88 N. E. 689, the witness was questioned on cross examination as to whether he had previously been convicted of assault and battery. The *Dotterer* Court, although recognizing that assault and battery was not an infamous crime, held that such questioning was proper.

"Section 2116 Burns 1908, Acts 1905, p. 584, § 240, is as follows: 'In all questions affecting the credibility of a witness, his general moral character may be given in evidence.' A like provision is contained in § 529 Burns 1908, § 505 R.S. 1881. . . . Section 2116, *supra,* applies to the cross-examination of a witness, for it is well recognized in the practice that, both as to parties and witnesses, the State may show on cross-examination as affecting the credibility of a party, or witness, that he had been arrested, prosecuted or convicted of similar offenses. *Parker* v. *State* (1894), 136 Ind. 284; *Vancleave* v. *State* (1898), 150 Ind. 273; *Shears* v. *State* (1897), 147 Ind. 51; *Crum* v. *State* (1897), 148 Ind. 401." 172 Ind. at 361, 88 N. E. at 691-692.

The Court in *Dotterer* relied on the *Parker* decision, and further held that such questioning was permissible due to "2116 Burns 1908, Acts 1905, p. 584, § 240." The statute last referred to is IC 1971, 35-1-31-6, (Ind. Ann. Stat. § 9-1608 [1956 Repl.]). Language similar to that contained in IC 1971, 35-1-31-6, (Ind. Ann. Stat. § 9-1608 [1956 Repl.]), can be found in IC 1971, 34-1-14-13, (Ind. Ann. Stat. § 2-1724 [1968 Repl.]). Thus the ruling in *Dotterer* would also be applicable to that statute as well. The impeachment rule set forth in *Parker* and *Dotterer* has been followed approvingly in numerous decisions. For example, see, *Wells* v. *State* (1959), 239 Ind. 415, 158 N. E. 2d 256; *Way* v. *State* (1946), 224 Ind. 280, 66 N. E. 2d 608; *Fritch* v. *State* (1927), 199 Ind. 89, 155 N. E. 257; *Pierson* v. *State* (1919), 188 Ind. 239, 123 N. E. 118.

Prior to *Niemeyer* v. *McCarty, supra,* it appears that it was within the sound discretion of the trial court to exclude such evidence if it believed that the nature of the prior conviction did nothing to affect the credibility of the witness. In *Robinson* v. *State* (1925), 197 Ind. 148, 154, 149 N. E. 888, 890, Chief Justice Ewbank stated:

> "Counsel for defendant then asked: 'You are the same man in the 10th infantry who was tried, and court martialed and sentenced to Fort Leavenworth, aren't you, for insubordination,' when an objection was sustained to the question, and defendant excepted. Sustaining this objection is complained of as error. The question was open to objection as being multifarious, calling for a single answer as to whether the witness was 'court martialed,' 'tried', and 'sentenced,' whether it was on a charge of insubordination, and whether the sentence was 'to Fort Leavenworth.' *And since it had no relation to the facts testified in chief by the witness, but went only to his credibility, we cannot say that his conviction by a court martial on the charge of 'insubordination,' even if the fact were proved, would necessarily have such a bearing on his credibility as to make the exclusion of evidence of that fact when inquired about by proper questions asked in proper sequence an abuse of the very wide discretion which the trial court has over the extent to*

*which a cross-examination shall be carried. Pierson v. State* (1919), 188 Ind. 239, 245, 123 N. E. 118." (our emphasis)

It is also interesting to note that in *Way* v. *State* (1946), 224 Ind. 280, 284-285, 66 N. E. 2d 608, 610, a case decided *after Niemeyer,* the Court stated:

> "Appellant complains that over his objection, he was required to answer on his cross-examination, that theretofore he had been convicted of 'speeding' and also of 'disorderly conduct.' It is a well recognized rule of law that any fact tending to impair the credibility of a party or witness by showing his interest, bias, ignorance, motives or that he is depraved in character, may be shown on cross-examination. *The extent of such cross-examination is for the sound discretion of the trial court.* While the evidence on this subject in this case may be slight in probative value, we can not say error was committed in admitting it. *Smith* v. *State* (1937), 212 Ind. 605, 610, 10 N. E. 2d 899; *Dotterer* v. *State* (1909), 172 Ind. 357, 360, 362, 88 N. E. 689; *Shears* v. *State* (1896), 147 Ind. 51, 55, 46 N. E. 331; *Vancleave* v. *State* (1898), 150 Ind. 273, 275, 276, 49 N. E. 1060. For the same reason the motion to strike out this evidence was properly overruled." (our emphasis)

It is abundantly clear from the language used in the *Way* decision that the admission of such evidence was *permissible,* but there is nothing to indicate that the admission was *mandatory.*

This Court can perceive of no reason why a trial court should be absolutely bound to permit questioning concerning convictions for crimes such as speeding or jaywalking without regard to the nature of the crime and its tendency to reflect on the credibility of the witness. It is illogical to assume that a conviction of *any* crime reflects, *ipso facto,* on the credibility of the witness as to truth and veracity. In *Fletcher* v. *State* (1874), 49 Ind. 124, 132, the Court observed:

> "In *Atwood* v. *Impson,* 5 C.E.Green, 150, it is said: 'With many, telling the truth is a habit and a principle which they adhere to always, though they may indulge in drinking, swearing, gambling, roystering, and making close bargains.

With others, lying is the habit, or principle, and if elevated to be senators or legislators, or made church-members or deacons, it does not always reform them.' "

We are of the opinion that the above logic is also applicable to individuals who have been convicted of criminal offenses which have no bearing on the individual's propensity to tell the truth.

Furthermore, we see little wisdom in permitting the exclusion of such evidence to rest in the sound discretion of the trial court. Simply stated, either the particular criminal conviction reflects on the witness' credibility for truth and veracity, or it does not. If the particular conviction is for a crime which has a tendency to reflect on the individual's credibility for truth and veracity, such evidence should not be excluded; if the prior conviction is for a crime which has no bearing whatsoever on his credibility for truth and veracity, such evidence should not be admitted.

In regard to this, Professor Wigmore stated:

"But in determining the limitations of Relevancy, two distinct attitudes are found on the part of the Courts:

(1) One is that any kind of misconduct, as indicating bad general character, is inadmissible; thus, a robbery or an assault or an adultery may be used, although none of these directly indicates an impairment of the trait of veracity. This is conceded even by many Courts which, when admitting character in the abstract, confine it to the quality of veracity. In such Courts, the use of these facts can have no justification whatever. In those Courts, however, which allow the use of general bad character there is an apparent logical propriety; *yet it is apparent only, for a robbery or a seduction may show a lack respectively of peaceableness or of chastity, but may not show that totally abandoned disposition which is understood to be involved in general bad character.*

(2) *The other attitude is entirely logical, and admits only such misconduct as indicates a lack of veracity,—fraud, forgery, perjury, and the like.* A minority of Courts are inclined to observe this limitation,—at least now and then.

Such are the questions of Relevancy that arise in asking on cross-examination for particular acts of misconduct.

(3) It must be added that some of the Courts that adopt the rule of discretion virtually thereby ignore all questions of Relevancy. *In leaving the whole scope of cross-examination on this subject to the discretion of the trial Court, they in effect leave it to rule as it pleases upon Relevancy; or to ignore Relevancy entirely."* Wigmore on Evidence, Vol. 3, § 982, (3d ed. 1940). [our emphasis]

The attitude found "entirely logical" by Professor Wigmore has been adopted in both the Model Code of Evidence and the Uniform Rules of Evidence. Rule 21 of the Uniform Rules of Evidence, reads, in part:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility."

The sound logic of the above rule is clearly revealed in an article found in the Minnesota Law Review which reads, in part:

"The proposed rule permits evidence of the criminal conviction of a witness to attack his credibility only where the crime involved 'dishonesty or false statement.' To take a specific example, kissing a married woman is mighty poor evidence of dishonesty or false statement, and indeed some might claim that it should not be classified as a criminal offense at all. It would not be admissible under the proposed rule. But a Minnesota statute has been construed as allowing any crime, whether a great felony or a petty misdemeanor, to be shown to attack credibility, and the court allowed a witness to be attacked on this ground where he had once been convicted of criminal assault because of such an attempted kiss." DeParcq, *The Uniform Rules of Evidence: A Plaintiff's View,* 40 Minn. L. Rev. 301, 319 (1956).

For all of the reasons discussed above, this Court holds that for the purpose of impeaching the credibility of a witness pursuant to IC 1971, 34-1-14-13, (Ind. Ann. Stat. § 2-1724 [1968 Repl.] or IC 1971, 35-1-31-6, (Ind. Ann. Stat. § 9-1608 [1956 Repl.], only those convictions for crimes involving dishonesty or false statement shall be admissible. It follows, therefore, that *Niemeyer* v. *McCarty, supra,*

and *McMullen* v. *Cannon, supra,* are overruled to the extent they hold that evidence of *any* prior conviction for any crime must be admitted in evidence. However, this Court is bound by IC 1971, 34-1-14-14, (Ind. Ann. Stat. § 2-1725 [1968 Repl.]), which permits impeachment by showing prior convictions for crimes which would have rendered a witness incompetent. These crimes are: treason, murder, rape, arson, burglary, robbery, kidnapping, forgery and wilful and corrupt perjury.

In the case at bar, counsel for plaintiff-appellant questioned the witness in regard to convictions for *any* crime. If counsel had a particular conviction in mind, he failed to make its nature known to the trial court by an offer to prove. Having determined that all crimes do not necessarily reflect on the credibility of the witness, we are of the opinion that the trial court did not err in excluding the question. It appears that the question was nothing more than a "fishing expedition" which, if answered, would not necessarily have revealed any admissible evidence. Such information could have been gained prior to trial by proper utilization of discovery.

Plaintiff-appellant also contends that it was error for the trial court to refuse Plaintiff's Instructions numbered 1, 3, 4, 5, 6, 7 and 9. We do not agree.

Plaintiff's Instruction No. 1 reads:

"If you find from a preponderance of the evidence, that defendant, William Anderson, was negligent and that Joseph Ashton, the driver of the automobile in which plaintiff, Dorothy Ashton, was riding, was negligent, and that the combined negligence of the defendant, William Anderson, and the driver of the automobile in which plaintiff was riding, were the proximate cause of the injuries, if any, sustained by plaintiff, Dorothy Ashton, the fact that the negligence of the driver of the automobile in which plaintiff Dorothy Ashton was riding was a contributing cause of the injuries, if any, sustained by her would not prevent Dorothy Ashton from a recovery against defendant, William Anderson."

Paintiff-appellant brought this action seeking to recover damages for injuries received in an automobile collision oc-

curring on August 15, 1964, in Terre Haute, Indiana. The plaintiff alleged that the defendant, William Anderson, failed to obey a stop sign, at an intersection, and that such failure resulted in a collision between his automobile and the plaintiff's automobile, in which the plaintiff claimed to be a passenger. The defendant-appellee, however, denied his negligence, claiming that it was the plaintiff who had disobeyed the stop sign. He further contended that the plaintiff was not a passenger, but rather was the driver of the car. Both parties introduced evidence in support of their respective contentions. Instruction No. 1, tendered by the plaintiff, takes from the consideration of the jury one of the most contested issues at trial, namely, whether the plaintiff was, or was not, the driver of the automobile. Therefore, it was proper to refuse this instruction.

Plaintiff's Instruction No. 7 instructed the jury as to the duty of a passenger in an automobile to exercise due care, and inferred that this was the only duty which could be imposed upon the plaintiff. This instruction was properly refused for the same reason stated in our discussion of Plaintiff's Instruction No. 1.

Plaintiff's Instruction No. 3 is as follows:

"If you find from a preponderance of the evidence that defendant William Anderson violated the statute just read to you, a presumption arises that he was negligent. This presumption is not a conclusive one. It may be overcome by other evidence showing that under all the circumstances surrounding the event the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence.

In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him to do otherwise.

To prove that a violation of the statute just read to you was excusable and justifiable so as to overcome the presumption of negligence, the evidence must support a finding that the violation resulted from causes or things beyond the control of the person charged with the violation."

The substance of the above instruction, however, was sufficiently covered by Plaintiff's Instruction No. 2 which was read to the jury. Instruction No. 2 reads,

"I instruct you that on August 15, 1964, there was in full force and effect in the State of Indiana a statute reading as follows:

'Every driver of a vehicle and every motorman of a street car shall stop or yield, as the case may be, at such sign or at a clearly marked stop line before entering an intersection except when directed to proceed by a police officer or traffic control signal.'

"If you find from a fair preponderance of the evidence that the defendant violated provisions of the statute, he was guilty of negligence as a matter of law unless you further find from a fair preponderance of the evidence that defendant's violation of the provisions of the statute was justifiable or excusable as a result of causes of things beyond the control of the defendant."

It is not improper for the trial court to refuse requested instructions where the propositions stated therein are sufficiently covered by other instructions actually given by the trial court. See, *Central Ind. Rwy. Co.* v. *Anderson Banking Co.* (1968), 143 Ind. App. 396, 240 N. E. 2d 840; *Central Ind. R. Co.* v. *Wishard* (1917), 186 Ind. 262, 114 N. E. 970.

Plaintiff's Instruction No. 4 informed the jury that it was the duty of the defendant to exercise such care and caution as a reasonably prudent person would have exercised under similar circumstances in the operation of his automobile. The substance of this instruction was fully covered by other instructions given by the trial court, and it was not error to refuse it.

Plaintiff's Instruction No. 5 stated that it was not a defense for the defendant to assert that some person other than the plaintiff was negligent if the defendant himself was guilty of negligence. In his answer and throughout the trial, the defendant insisted that it was the plaintiff who had been negli-

gent. At no time did the defendant attempt to raise the defense described in the above instruction. The above instruction, if it related at all to the issues, merely defined what would have been an unsuccessful attempt to prove contributory negligence. Court's Instruction No. 10 fully instructed the jury as to the defense of contributory negligence, and therefore it was not error to refuse the tendered instruction.

Plaintiff's Instruction No. 6 set forth the law on the burden of proof and further stated that the jury could rely on any and all of the evidence, no matter who presented it. Plaintiff-appellant argues that this instruction was necessary to eliminate the danger that the jury might be of the opinion that only that evidence produced by the plaintiff could be considered in rendering a verdict in her favor. However, Court's Instruction No. 24 clearly informed the jury that *all* of the evidence should be considered in reaching a verdict.

Plaintiff-appellant contends it was error to refuse Plaintiff's Instruction No. 9 because it was correct to instruct the jury that the plaintiff could recover only if she met her burden of proof. Here again, however, plaintiff-appellant has overlooked the fact this element of the instruction was fully covered by Court's Preliminary Instruction No. 4 which was given to the jury.

It is also claimed that it was error for the trial court to give Defendant's Instruction No. 1, which reads as follows:

> "I instruct you that on the 15th day of August, 1964, there was in full force and effect a Statute of the State of Indiana which reads in pertinent part as follows:
>
> 'When two vehicles enter an intersection from different highways at the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.' "

It is the contention of plaintiff-appellant that this instruction was improper since there was no evidence in the case that both vehicles entered the intersection at the same time.

There was a conflict in the testimony as to which vehicle

entered the intersection first. There was also a conflict as to whether either, neither, or both vehicles stopped before proceeding into the intersection. Thus it would have been permissible for the jury to infer that both vehicles had stopped and then proceeded into the intersection at the same time. In *Schlarb* v. *Henderson* (1936), 211 Ind. 1, 7-8, 4 N. E. 2d 205, 208, the Court stated:

> "It is contended that several of the instructions are not applicable to the evidence. But instructions are not open to that objection if they are within the issues and pertinent to any question of fact which the jury may properly consider under the evidence, or any legitimate inferences which may be drawn from the evidence."

The instruction given in the case at bar was clearly within the issues and pertinent to a question of fact which may have been inferred from the evidence. Therefore, it was not error to give the instruction.

For all of the foregoing reasons, this cause is transferred, and the judgment of the trial court is affirmed.

Arterburn, C. J., DeBruler and Prentice, JJ., concur; Givan, J., dissents.

NOTE.—Reported in 279 N. E. 2d 210.