**Eleanor FULTZ, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 3–1181A302.

Court of Appeals of Indiana, Third District.

Aug. 30, 1982.

Transfer Denied Oct. 13, 1982.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Eleanor Fultz was convicted by jury of manslaughter, a class B felony.[1] She received a six year determinate sentence. On appeal, she raises the following issues:

(1) Did the trial court err by allowing the State to impeach Fultz with prior criminal convictions?

(2) Did the trial court err by refusing to allow Fultz to introduce evidence to show self-defense?

(3) Did the trial court err by refusing to permit Fultz to explain her confession?

(4) Did the trial court err by refusing Fultz's tendered final instructions?

(5) Did the trial court err by denying Fultz's motion to dismiss?

(6) Did the trial court err by giving the State's tendered final instruction?

---

1. "35–42–1–3. Voluntary manslaughter.— (a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a class B felony.

"(b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) [35–42–1–1(1)] of this chapter to voluntary manslaughter." (Brackets original.)

(7) Did the trial court err by denying Fultz's motion for *voir dire* of the prospective jurors?

We affirm.

## I.

### Opening the Door

During direct examination, Fultz was asked by defense counsel if she had been convicted of shoplifting. Fultz admitted that she had been. On cross-examination, Fultz was asked by the deputy prosecutor if she had been convicted of any other crimes. Fultz's counsel objected citing *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. The objection was overruled. Fultz then answered that she had been convicted twice of assault and battery, but that she could not remember a conviction for resisting arrest. Fultz contends that her direct examination opened the door only to the shoplifting conviction which she admitted, and the evidence of the other crimes was admitted erroneously under the *Ashton* rule. The State responds that Fultz opened the door to her entire criminal record on direct examination and that she waived the exclusionary rule of *Ashton*.

 When a witness is impeached by evidence of criminal convictions, only convictions involving infamous crimes or those involving dishonesty or false statements are admissible to impeach that witness's credibility. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, 216–17. Evidence of all other criminal convictions are inadmissible and excluded for credibility impeachment purposes. The *Ashton* rule applies both in civil and criminal cases. *Dexter v. State* (1973), 260 Ind. 608, 297 N.E.2d 817, 818. Before *Ashton*, whether a criminal conviction inquiry tended to impeach a witness's credibility was left to the "sound discretion" of the trial court. *City of South Bend v. Hardy* (1884), 98 Ind. 577, 580. The

exclusionary rule of *Ashton* limits a trial court's discretion by permitting only evidence of infamous crimes [2] or crimes which involve dishonesty or false statement. The prejudicial effect of evidence of all other crimes outweighs the probative value of such evidence as a matter of law under the exclusionary rule of *Ashton*.

 A witness may waive the *Ashton* evidentiary bar by "opening the door" to evidence of criminal convictions. The door may be opened by a direct examination question which invites an answer containing evidence of any criminal conviction. In *Baker v. State* (1978), 267 Ind. 643, 372 N.E.2d 1174, the defendant witness was asked on direct examination whether he had any prior criminal convictions. The witness answered that he had a criminal record, but he mentioned having been convicted only of a burglary charge. Then, on cross-examination, the witness was asked whether he had any other convictions. Over objection, the witness testified that he had a Firearms Act violation. The court upheld the admission of the Firearms Act violation because the defendant had opened the door to his entire criminal record on direct examination. Similarly, in *Hauger v. State* (1980), Ind., 405 N.E.2d 526, the defendant witness was asked if he had ever committed any of the infamous crimes listed in the *Ashton* case. To each question, the defendant denied such a conviction. On cross-examination, the State proved over objection that the defendant had been convicted of several crimes which otherwise would have been excluded by the *Ashton* rule. The *Hauger* court reasoned that the defendant had placed his character in issue by the questioning on direct examination. Because the defendant had, in effect, tendered his good character as an issue, the *Ashton* rule did not apply and the State properly met the defendant's good character evidence with evidence of his bad character.

---

2. At common law, a conviction for an infamous crime rendered the convict legally incapable and unqualified to give testimony. Infamous crimes included: treason, murder, rape, arson, burglary, robbery, kidnapping, forgery and wilful perjury. This common law rule of evidence was amended in 1881 by what is now codified as Ind.Code 34–1–14–14. That statute makes the conviction of an infamous crime relevant only to the witness's credibility, not to the witness's ability and competence to give testimony.

■ If the questioning on direct examination is precise and narrowly worded, then the protection of the *Ashton* exclusionary rule can be forfeited only by an answer which tenders evidence of otherwise excluded criminal convictions. In reviewing trial court rulings admitting evidence, this Court will reverse only on a showing of an abuse of discretion. *Tipton County Abstract Company, Inc. v. Heritage Federal Savings and Loan Association* (1981), Ind.App., 416 N.E.2d 850. We find that the trial court abused its discretion by allowing the evidence of the assault and battery convictions and the question regarding the resisting arrest conviction. Neither the question nor Fultz's answer opened the door to evidence of other criminal convictions. Fultz could only have been cross-examined upon the subject matter raised in her direct examination. Ind.Rules of Procedure, Trial Rule 43(A). We emphasize that the assault and battery and resisting arrest convictions are inadmissible and excluded under the *Ashton* rule. We are unable to conclude that Fultz waived the protection of the exclusionary rule.

Although we find that the trial court abused its discretion by allowing the cross-examination, we conclude that the error is harmless. Because Fultz confessed in court to shooting and killing the victim, we conclude that the judgment of the trial court is not inconsistent with substantial justice and that the judgment of guilt is supported by overwhelming evidence. *Howell v. State* (1980), Ind., 413 N.E.2d 225; TR. 61.

## II.

### Evidence of Victim's Character

■ Fultz offered to prove that she was the victim of a series of severe beatings by the victim beginning in 1973. Fultz further offered to prove by expert testimony that she had become affected by a "battered woman syndrome" which triggered her shooting the victim in response to his menacing finger pointing and inaudible threat as he sat on her living room couch. The State responds that this evidence was properly excluded because the victim had not committed an aggressive act sufficient for Fultz to form a reasonable belief that an imminent use of force was necessary. Because Fultz failed to come forward with appreciable evidence of the victim's aggression substantiating her self-defense contention, she could not come forward with evidence showing the reasonableness of her fear and apprehension. We agree with the State.

■ Evidence of prior acts of violence by a homicide victim are inadmissible in the absence of an issue of self-defense. *Begley v. State* (1981), Ind., 416 N.E.2d 824. An exception to this rule is the existence of the issue of self-defense. *Teague v. State* (1978), 269 Ind. 103, 379 N.E.2d 418. Before evidence of the victim's violent character can be admitted, the defendant must show by appreciable evidence that the victim's aggression was the proximate or efficient cause justifying the defendant's acts of self-defense. *Begley v. State* (1981), Ind., 416 N.E.2d 824. Our review of the record shows that Fultz shot the victim from a distance as the victim sat on a couch in Fultz's living room. Fultz testified that while the locksmith was in her house changing the locks on her doors, the victim had threatened her and pointed his finger at her as he sat on the couch. Because Fultz failed to introduce appreciable evidence of the victim's aggression, the trial court acted properly by excluding evidence of the prior acts of violence by the victim against Fultz.

## III.

### Explaining Written Confession

■ Fultz contends that the trial court erred by refusing to admit her testimony regarding her conversation with her mother. Fultz asserts that she related this conversation which detailed the victim's history of violence against Fultz to the police, but the police failed to include this in the typewritten confession. The State responds that Fultz could not introduce this evidence because it was character evidence of the victim's violent acts against Fultz. Because Fultz had failed to introduce appreciable

evidence showing that the victim was the initial aggressor, she could not introduce this evidence by way of an explanation of her confession.

Our review of the record shows no error. We find that the trial court simply insisted that Fultz testify only as to her conversation with her mother, not as to the victim's history of violence. Indeed, we are unable to find in the record that the trial court ruled that Fultz could not testify about the circumstances of her confession, including her conversation with her mother.

### IV.

#### Self-defense Instructions

Fultz tendered three final instructions defining self-defense to the jury. The trial court refused to give these instructions. Because the issue of self-defense had not been properly proved and was not before the jury, we find no error in the trial court's refusal to give Fultz's self-defense instructions.

### V.

#### Self-defense Dismissal

Ind.Code 35–41–3–2 provides that no person shall be placed in legal jeopardy for acting in justifiable self-defense. Because Fultz offered or advanced a justification for her shooting the victim, she contends that the State was obliged to follow the preliminary charge procedure set forth in Ind.Code 35–41–1–1. Because Fultz did not act in self-defense which would entitle her to a preliminary charge hearing under 35–41–1–1 we are unable to conclude that the trial court prejudicially erred by denying Fultz's motion to dismiss.

### VI.

#### "Mere Threats" Instruction

The trial court gave the following modified instruction tendered by the State:

"You are instructed that mere threats or abusive words are no justification for an intent to kill, though addressed to the person threatened."

Fultz objected to this instruction. She contended that because the court had removed the self-defense issue from the jury, it should not have instructed the jury that mere threats provided no justification for homicide.

Our review of the record shows that the trial court did not remove the issue of self-defense from the jury; rather, Fultz failed to sustain her burden of proof showing the grounds for self-defense. Because the evidence showed that Fultz believed the victim was threatening her, the trial court acted properly by instructing the jury that threats are no justification for homicide.

### VII.

#### Voir Dire

Before the questioning of prospective jurors began, Fultz filed a motion to permit individual questioning of each prospective juror. Fultz made this motion because the trial judge was quoted in the March 21, 1981 edition of the *South Bend Tribune* as saying that the evidence presented in another cause "justified a conviction of murder." The article continued quoting the judge "But the jury, as is their right, returned a verdict of voluntary manslaughter." Citing the similarity of charges and the possible venire exposure to the judge's statement, Fultz sought voir dire of the jurors. Her motion was overruled.

In reviewing the voir dire of prospective jurors, we reverse only upon a showing of an abuse of discretion. *Lynn v. State* (1979), Ind., 392 N.E.2d 449. Our review of the record shows that the prospective jurors were questioned extensively in voir dire by the attorneys for the State and for Fultz. We are unable to conclude that the trial court abused its discretion by denying Fultz's motion for individual voir dire of the jurors.

Affirmed.

GARRARD, J., concurs.

HOFFMAN, P. J., concurs in result.