James L. PARKER, Appellant,

v.

STATE of Indiana, Appellee.

No. 84A01–8605–CR–134.

Court of Appeals of Indiana,
First District.

Dec. 30, 1986.
Rehearing Denied Feb. 10, 1987.

James W. Boswell, Christopher B. Gambill, Public Defenders Office, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

Defendant-appellant James Parker (Parker) appeals his conviction of reckless homicide, a class C felony, and the presumptive sentence imposed.

We affirm.

The facts relevant to our decision can be briefly summarized. Parker was charged with murder in the death of Robert Ash (Ash), Parker's supplier of cocaine. On the afternoon of July 6, 1985, Ash removed approximately $117.00 from a coffee table while making a cocaine delivery at Parker's home. Parker accused Ash of taking the cash. When Ash refused to return the money, Parker tried to intimidate him with a steak knife, initiating a physical altercation. Parker, a wrestling coach, performed an arm drag on Ash, causing Ash to move into the knife, causing his death. Parker hid the body in his basement, and disposed of the knife and some clothing in a nearby dumpster. He led the police to the body the following morning, after he had returned from work. At his trial, Parker relied on at least two theories: that the death as it had been described by Parker was accidental, and that he acted in defense of himself or property.

Parker presents the following issues for our review on this appeal:

1. Whether the court committed reversible error by admitting, during the State's case-in-chief, evidence that Parker had been convicted previously and that he had engaged in another act of criminal misconduct.

2. Whether the court erred in admitting into evidence photographs of the defendant's wife and child, contained in the defendant's wallet at the time of arrest.

3. Whether the court erred in imposing the presumptive sentence for reckless homicide.

## ISSUE ONE

Parker sought by motion in limine to prevent the introduction of evidence by the State of "any alleged prior violent or misconduct by the defendant unless the defendant puts his character in issue...." The court granted the motion. However, during its case-in-chief, the State offered a taped interview of Parker, conducted the day after the homicide. The tape contained the following questions and answers:

Officer: Okay. Jim, have you ever been in any trouble before? Ever have any serious problems?

Parker: Well, I got picked up at Sonka's one time for home ... home grown pot. Home grown. I had one joint. That was the officer that we in there.

Officer: Is that right? Okay.

Parker: And I got a DWI and didn't have a driver's license.

Parker objected to the admission of this portion of the tape as irrelevant, immaterial, and highly prejudicial, arguing that the evidence could not properly be used for impeachment purposes pursuant to *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, or for purposes of proving the defendant's bad character, until the defendant put his character in issue. The State acknowledged that it did not offer the statements to impeach Parker or in an effort to question Parker's character, but in support of its case. The State argued that the admission of the prior conviction and criminal activity would be harmless, would contribute to the flow of the statement, and would be proper because the statements were obtained after *Miranda* advisements.[1] The State did not argue that the statements

---

[1] The State has not presented this basis for admissibility in its brief, arguing only that the error was cured by the court's admonition, and was not so prejudicial as to warrant reversal. Hence, we will not address this contention.

were admissible in its case-in-chief pursuant to any recognized exception. The trial court ruled that it would admit the taped statement without editing but with an admonishment to the jury to ignore entirely "any reference to uh ... pot or DWI ... if that's what you believe the statement says." (R. 320).

█ The general rule in Indiana regarding the admission of evidence which shows or tends to show an accused is guilty of other independent criminal activity from the crime charged is that such evidence is inadmissible. *Jenkins v. State* (1985), Ind., 474 N.E.2d 84, 88. The rule is predicated upon the precept that an accused has the right to know the nature of evidence and cause of the accusation against him, *Malone v. State* (1982), Ind., 441 N.E.2d 1339, 1345, and strengthens the due process presumption of innocence accorded every individual accused of a crime by forbidding the State from attacking an accused's character before the accused has put his character in controversy. *Id.* at 1346. In addition, the rule prevents the State from raising collateral issues which confuse the jury or divert its attention from the guilt or innocence determination in the charges before it. *Id.*

█ Evidence of other criminal acts may be admissible in certain cases, however, to prove an accused's identity, knowledge, intent, motive, or to demonstrate a common scheme or plan. *Jenkins,* 474 N.E.2d at 88. To be admissible by one of these exceptions, the evidence must possess substantial probative value, and be significantly related to the charged crime in time, place and circumstance so as to be logically relevant. *Malone,* 441 N.E.2d at 1346.

█ In addition to the evidentiary rules governing specific bad acts are rules governing the admissibility of acts of which the defendant has already been convicted. When acts of misconduct have resulted in convictions, only those convictions for crimes of an infamous nature, i.e. crimes which would formerly have rendered the convicted person incompetent as a witness,

or crimes involving dishonesty or false statement may be used, and then, only for impeachment purposes. *Ashton,* 279 N.E.2d at 210. Where the evidence does not fit into any of the exceptions to the general rule, our courts have concluded that the purpose of its admission was to prejudice the defendant in the minds of the jury. *See, Burns v. State* (1970), 260 N.E.2d 559.

█ It is readily apparent that the trial court did not have a proper basis for admitting the testimony relating to either the defendant's prior use of marijuana or his conviction of driving while intoxicated. Thus, we must consider whether the admission of this evidence was so prejudicial as to result in a denial of due process, warranting reversal. In doing so we must acknowledge a series of cases in which the Indiana courts have held that informing a jury of a defendant's prior convictions amounts to fundamental error.

█ Beginning with *Lawrence v. State* (1972), 259 Ind. 306, 286 N.E.2d 830, we have recognized an inherent unfairness in habitual offender proceedings which permit a jury to learn of a defendant's past convictions while deciding guilt or innocence on the principal charge. In these settings, a conviction on the principal charge, possibly influenced by the prior convictions necessary for the second segment of the trial, may be needed to obtain a conviction on the habitual criminal charge, creating a circuitous dependency and circumventing the defendant's right to a fair trial. *Id.* at 833–834. We have extended the rationale of *Lawrence* to other situations where it is necessary to allege a prior conviction in order to raise the crime from a class A misdemeanor to a class D felony. *See, Sweet v. State* (1982), Ind., 439 N.E.2d 1144; *Smith v. State* (1983), Ind.App., 451 N.E.2d 57; *Ours v. State* (1983), Ind.App., 452 N.E.2d 1073. We do not believe these cases compel automatic reversal as a general rule whenever a prior conviction is admitted improperly into evidence. Consequently, it is our responsibility to deter-

mine in the present case whether the error in the admission of Parker's conviction can be held to be harmless.

"It is the essence of the harmless error doctrine that a judgment may stand only when there is no 'reasonable possibility that the practice complained of might have contributed to the conviction'." *U.S. v. Hasting* (1983), 461 U.S. 499, 507, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 citing *Fahy v. Connecticut* (1963), 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171. The inquiry is not "merely whether there was enough evidence other than that erroneously admitted to support the result", but rather, "even so, whether the error itself had substantial influence." *Kotteakos v. U.S.* (1946), 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. It is well settled law in Indiana that the introduction of otherwise inadmissible evidence which is merely cumulative and not decisive of guilt is not prejudicial error. *See, Kramer v. State* (1974), 161 Ind.App. 619, 317 N.E.2d 203, 207.

█ Parker's strategy in meeting the charge of murder was to convince the jury that Ash's death occurred accidentally. In order to persuade the jury that his conduct was unintentional, it was necessary for the jury to believe that he was being completely candid with them about the events which transpired, and his conduct in the past. Parker freely admitted his drug use, describing the quantities of cocaine he had been consuming when he met Ash, and when the incident occurred, and the drug's effect on his lifestyle. Parker portrayed his relationship with Ash as being one of buyer and seller: initially Parker sold to Ash; then Ash sold to Parker. Parker also volunteered that his license had been taken as a consequence of his DWI conviction, making it difficult for him to cash a check. The record reveals that neither Parker nor his counsel made any attempt to exclude Parker's criminal activity or his conviction from the jury; rather, it was in his interest to use the prior conviction and drug use as an explanation of his behavior. This strategy was apparently effective because the jury acquitted him of murder. The admis-

sion of Parker's conviction may have played some role in the jury's deliberations. We cannot conclude in these circumstances, however, that it was prejudicial.

## ISSUE TWO

The State offered into evidence Parker's wallet, containing two photographs, one depicting his wife, a caucasian woman, and the other, his child. Parker is a black man. Parker objected to the introduction only of the photographs, contending that the photos were highly prejudicial, irrelevant and immaterial, and would serve only to inflame the jury. Although the photographs clearly had no probative value independent of the wallet, we cannot find a prejudicial impact on the jury. Consequently, in this setting, we conclude that the error in admitting the pictures was also harmless.

█ Like other types of physical and testimonial evidence, certain requirements of relevancy and reliability govern the admissibility of photographs. A photograph must meet the usual relevancy standard; it must throw or tend to throw light on the guilt or innocence of the accused even though that tendency be only slight. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78. Photographic evidence is deemed to be relevant if a witness would be permitted to testify as to the subject matter portrayed in the photograph. *Askew v. State* (1982), Ind., 439 N.E.2d 1350. Similarly, an adequate foundation must be laid before a photograph may be admitted into evidence. If used for demonstrative purposes, a reliable source must state that the photograph truthfully and accurately represents that intended to be portrayed. *Wade v. State* (1986), Ind., 490 N.E.2d 1097, 1104. Whether a sufficient foundation has been laid remains, as does the relevancy determination within the sound discretion of the trial court, reviewable on appeal only for an abuse of discretion. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, 1225. The appellant bears the burden of demonstrating prejudicial harm to merit reversal. *Wade*, 490 N.E.2d at 1103.

■ The proponent of the photographs at issue in the present case failed to establish either criterion of admissibility.[2] While we can find no cases discussing the relevancy of the composition of the defendant's family, our courts have recognized that questions about a victim's spouse or surviving family are not a proper part of the State's case, bear no relationship to the guilt or innocence of the accused, and, ordinarily are calculated only to prejudice the defendant with the jury. *See, Kelley v. State* (1984), Ind., 470 N.E.2d 1322, 1325; *Rowe v. State* (1968), 250 Ind. 547, 237 N.E.2d 576. We cannot find a distinction in this case. The pictures of Parker's wife and child had no more tendency to prove his guilt than would testimony by a witness as to the racial composition of the defendant's family. The photographs added nothing of probative value to the wallet.[3] They should have been excluded.

■ Testimony which is neither material nor relevant, such as testimony relating to a defendant's family, is generally presumed to be prejudicial to the defendant because "to hold otherwise would be to disregard the realities of the trial atmosphere and the emotional frailties of human nature." *Rowe, id.,* at 577. However, even if we presume initially that the photographs were prejudicial, we find, after examining the whole record, that this presumption is adequately rebutted by overwhelming evidence of Parker's guilt. The jury heard Parker testify, both at trial and in his taped interview with the police, about the circumstances surrounding the death of Bobby Ash. The physical evidence and the testimony of the police officers who investigated the homicide corroborated Parker's testimony. The jury's verdict on a lesser-included offense urged by Parker indicates that it found Parker's account of the events to be persuasive and credible. The jury's erroneous exposure to the fact of Parker's bi-racial marriage therefore did not have such a substantial impact on the jury's verdict as to constitute reversible error.

### ISSUE THREE

Parker avers that the sentencing court erred reversibly by failing to account for the overwhelming mitigating testimony presented at the sentencing hearing. He invites us, at length, to re-evaluate the evidence considered by the trial court, yet fails to direct us to any authority for such a re-examination.

■ Reasonable minds may differ on what sentence is appropriate in a particular case. Given the degree of subjectivity that cannot be eliminated in the sentencing process, it would be inappropriate for us merely to substitute our judgment for that of the trial judge. *Fointno v. State* (1986), Ind., 487 N.E.2d 140, 149. Although a trial judge may use mitigating factors to determine a sentence, mitigating factors are not a mandatory consideration in sentencing a criminal defendant. *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 496. Thus, whether the basic sentence will be increased or decreased due to aggravating or mitigating circumstances is within the trial court's discretion. When the trial court imposes the basic sentence, this court will presume that it considered the proper factors, listed in IND. CODE 35–38–1–7, in determining that sentence. *Wilson v. State* (1984), Ind., 465 N.E.2d 717, 721. No sentence authorized by statute will be revised unless manifestly unreasonable. *See,* Ind.R.App.Rev.Sen. 2.

■ It is apparent from the transcript of the sentencing hearing that the trial court carefully considered the statutory factors in light of the information presented at trial, in the presentence report, and at the hearing. He specified in some detail

---

2. The State established none of the foundational prerequisites for the introduction of the photographs, and succeeded in introducing the wallet with only a partial foundation. No objection was made on this ground.

3. The record does not reveal the wallet's evidentiary purpose; it is evident that the wallet had only a slight tendency, if any, to substantiate the State's allegation of a knowing or intentional killing.

both aggravating and mitigating factors, and the weight he felt could properly be attributed to each. The sentencing court concluded that there was "just as much on the heavy end as on the light end." (R. 100). We cannot say that this conclusion is manifestly unreasonable given the nature of the offense and the character of the offender.

The judgment is affirmed in its entirety.

NEAL, J. concurs.

RATLIFF, J. concurs with separate opinion.

. RATLIFF, Judge, concurring.

I concur that Parker has failed to demonstrate reversible error and that the judgment of the trial court should be affirmed. However, I have some concern with the language employed by the majority opinion in arriving at that result. Consequently, I have written this concurring opinion to express my reasons for affirming the judgment.

I agree that the questions and answers contained in Parker's taped statement which was played to the jury revealing his prior convictions for possession of "pot" (marijuana) and for driving while intoxicated were improperly admitted. Such statements had no relevance to the crime for which Parker was on trial, were not proper impeachment evidence under *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, and were squarely within the general rule prohibiting admission of evidence of other unrelated crimes. *Jenkins v. State* (1985), Ind., 474 N.E.2d 84. The trial court should have redacted the offending questions and answers from the taped statement before allowing the jury to hear it. The question thus becomes whether the trial court's error in allowing this evidence of other crimes was prejudicial since, in order to obtain reversal, an appellant must show both an erroneous ruling and prejudice resulting therefrom. *Gambill v. State* (1985), Ind., 479 N.E.2d 523; *Watkins v. State* (1984), Ind., 460 N.E.2d 514; *Smith v. State* (1982), Ind., 432 N.E.2d 1363.

The trial judge admonished the jury to disregard entirely any reference to "pot" or "DWI" in Parker's confession, telling them they "should ignore that entirely. That has no bearing on this case. It should not in any way be considered for any purpose whatsoever. It's completely extraneous to the issues at hand here ..." Record at 319–20. Ordinarily, such an admonishment is deemed sufficient to cure the error. *Dudley v. State* (1985), Ind., 480 N.E.2d 881. In my view, the trial court's admonition was a sufficient curative measure, especially in view of the strength of the state's case. *See Foust v. State* (1986), Ind., 489 N.E.2d 39.

I also agree that the photographs of Parker's wife and child found in his wallet should not have been admitted into evidence. These photographs had no bearing whatever on this case, and, in my view, should have been removed from the wallet before the wallet was introduced. Again, however, the issue is whether any prejudice resulted to Parker. An appellant always has the burden of affirmatively demonstrating that the alleged error was prejudicial. *Edwards v. State* (1985), Ind., 479 N.E.2d 541. Parker makes the argument that because he is a black man married to a white woman introduction of the photograph of his wife and child prejudiced his case before an all white jury in Vigo County. Such argument is pure speculation. Parker points to no facts which in any way tend to establish his premise, and neither does he cite any authority for his position. In his argument in support of his objection to the photographs, one of Parker's attorneys alluded to remarks he overheard at a party in Miami concerning a black Navy pilot married to a white woman. However, these remarks were not evidence, and certainly the expressions of revelers at a Miami party are not indicative of the state of mind of jurors in Vigo County, Indiana. In addition, the strength of the state's case makes it highly unlikely that the jury was influenced by these photographs. This is particularly true where, as here, Parker was charged with murder in a senseless

killing and was convicted only of reckless homicide.

Although it is difficult to envision any benign motive on the part of the prosecution in placing before the jury the evidence of other unrelated crimes and the photographs, for the reasons I have indicated in this opinion, I concur that any error was harmless.

I fully concur in the majority opinion in regard to the sentence imposed.