David C. GARCIA, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 20A03–8610–CR–309.

Court of Appeals of Indiana,
Third District.

July 7, 1987.

Thomas A. Murto, Murto & Holbrook, Goshen, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

David C. Garcia was tried by jury and was convicted of driving while intoxicated, driving while suspended and possession of LSD, a controlled substance.

The evidence disclosed that police officer Raeder had been stopped waiting for a train to pass on a railroad crossing in Elkhart. When the train passed, another motorist notified Raeder that a man was either asleep or unconscious in an automobile on the other side of the tracks. That person was Garcia. He was alone in an automobile that belonged to his wife.

Officer Raeder testified that the engine was running and Garcia was behind the wheel. Garcia, on the other hand, presented testimony through his wife, his neighbor, Cynthia Sidwell, and himself, to the effect that Ms. Sidwell had been sent in the automobile to find him; that she was driving him home when they stopped for the train; and that as the result of an argument she left the auto while it was stopped at the railroad crossing.

During the cross examination of Garcia the deputy prosecutor asked if he was not the David Garcia who had been convicted of second degree burglary in 1976. When he denied that he had such a conviction, the deputy handed him a document identified as state's exhibit 3 and again asked the question. When defense counsel's objection to the repetitive question was sustained, the deputy attempted to introduce the exhibit [1] into evidence.

An extensive side bar occurred at this point, much of which appears in the transcript as simply "inaudible." [2] It does appear that twice the deputy told the judge, "I have to impeach him." It was during this conference that the defense first moved for a mistrial. That motion was taken under advisement.

The state persisted in its rebuttal. It called probation officer Tirman who had counseled the party referred to in exhibit 3. During the rebuttal it appeared that the person referred to in exhibit 3 was identified as David Crockett Garcia. Neither the social security number nor the date of birth of that individual were the same as defendant's, but the differences might have been the result of typographical errors.[3] Tirman could not identify Garcia as the person convicted in 1976.

Finally, it appeared that the conviction which was being inquired about was actually entering to commit a felony rather than burglary. As such the offense was not shown to be admissible under *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210.[4]

When Tirman could not identify Garcia, counsel again moved for mistrial. The court denied the mistrial but struck Tirman's testimony and instructed the jury to disregard all the questions to Garcia except the initial one and the answer thereto.

The question presented by this appeal was whether that action was sufficient to safeguard Garcia's right to a fair trial. We conclude that under the circumstances of this case it was not.

Whether to grant a mistrial is a question committed to the sound discretion of the trial court. Ordinarily, if the court instructs the jury to disregard some prejudicial comment or answer, we will presume that the judge's admonishment was sufficient to dispel the harm that occurred.

There are circumstances, however, where the court must grant a requested mistrial. The leading Indiana decision establishing the basis for that review is *White v. State*

---

1. The offer was rejected for lack of any foundation. The exhibit is not before us, although it was identified in state's rebuttal as a docket sheet.

2. We have no means of knowing whether such a reference refers to a word, a sentence, or five minutes of dialogue.

3. Each differed by a single digit. The defendant had social security number 207–66–0483 and was born March 17, 1953. Those of the person convicted in 1976 were 307–66–0483 and March 17, 1956.

4. *Ashton* permits the use of convictions of two kinds: (a) crimes involving dishonesty or false statement, and (b) crimes referred to in IC 34–1–14–14 which at common law would have rendered a witness incompetent. The latter includes burglary, but that inclusion should not be expanded to cover merely entering to commit a felony. While the conviction might have involved dishonesty, it did not necessarily do so and there was no effort to establish that it factually did. It clearly did not involve false statement.

(1971), 257 Ind. 64, 272 N.E.2d 312. In *White* a police officer volunteered in answer to a question that the defendant had been previously brought to the police station "with reference to" an armed robbery. The court denied a defense motion for mistrial but instructed the jury to disregard the answer. The Supreme Court held this was inadequate and granted a new trial.

To determine when the grant of mistrial was necessary the court concluded the defendant had the burden to show he was harmed, but this did not require him to establish that the error caused the verdict to be what it was. 257 Ind. 77, 272 N.E.2d 319. It is enough to show by the circumstances that the error placed him in a position of grave peril to which he should not have been subjected. 257 Ind. 78, 272 N.E.2d 320. *See also Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843 adopting the same standard for reviewing misconduct of counsel.

While this statement does little to particularize when a mistrial rather than an admonishment is necessary, it nevertheless states the basic question to be answered. To aid in securing the answer the *White* court listed thirteen considerations bearing upon the conclusion to be reached.[5]

Here it is indisputable that the prosecution deliberately sought to present the prejudicial information to the jury. It persisted despite defendant's denial and its own inability to establish that he was the person involved even if the offense had been properly provable under *Ashton*.

As in *White* there was a substantial credibility issue. Not only Garcia but his wife and their neighbor told a different story from that told by Officer Raeder. This is underscored by the fact that the prosecution opened its final argument by stating that someone was lying in their testimony.

Thus, injecting and repeating the accusation of a prior felony conviction against Garcia did place him in a position of grave peril to which he should not have been subjected.

We therefore reverse the convictions and remand for a new trial.

HOFFMAN and NEAL, JJ., concur.

5. They were:
"1. The effect of constitutional provisions, statutes or rules relating to harmless error.
2. The degree of materiality of the testimony.
3. Other evidence of guilt.
4. Other evidence tending to prove the same fact.
5. Other evidence that may cure the improper testimony.
6. Possible waiver by the injured party.
7. Whether the statement was volunteered by the witness and whether there had been deliberate action on the part of the prosecution to present the matter to the jury.
8. The penalty assessed.
9. Whether or not the testimony, although volunteered by the witness, was in part brought out by action of the defendant or his counsel.
10. The existence of other errors.
11. Whether the question of guilt is close or clear and compelling.
12. The standing and experience of the person giving the objectionable testimony.
13. Whether or not the objectionable testimony or misconduct was repeated."
272 N.E.2d at 314–15.