**Ferdinand E. KELLEY, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 82A04–8910–CR–447.**

Court of Appeals of Indiana, Fourth District.

July 2, 1990.

J. Richard Kiefer, Indianapolis, for appellant.

Linley R. Pearson, Atty. Gen., Danielle Sheff, Deputy Atty. Gen., Indianapolis, for State.

MILLER, Judge.

Ferdinand Kelley appeals his conviction for dealing in cocaine, a Class A felony. We rephrase and renumber the issues as follows:

I. Whether there was sufficient evidence to sustain the conviction.

II. Whether the trial court improperly admitted a hearsay statement of an informant who told the police Kelley was his source for cocaine.

III. Whether the trial court improperly admitted evidence of drug paraphernalia found in Kelley's apartment.

We reverse on issue II and remand for a new trial.

### FACTS

On September 10, 1987, Evansville police officers Richard Whitlow and Gary Anderson arrested Kenneth Guthrie for possession of marijuana and cocaine. At

the police station, Guthrie named Kelley as his source for cocaine and agreed to set up a transaction with Kelley under police surveillance. Guthrie made several calls to a beeper number and eventually spoke to Kelley. Kelley agreed to meet Guthrie later that evening. The telephone conversation was recorded, but contains no specific mention of the reason for the meeting or its location.

The officers took Guthrie to an unoccupied house owned by Guthrie's family. After waiting approximately 45 minutes, the officers and Guthrie moved to Guthrie's mother's house which was two houses away from their original location. Guthrie called the beeper number again, but the officers could not remember if he spoke to anyone. A few minutes later, Kelley drove up in front of the house and honked the horn. He·got out of his car and knocked on the door. Guthrie's mother went to the door. After speaking to her, he turned around and sat down on the steps leading to the porch.

The officers had Guthrie in handcuffs. They removed the handcuffs and Guthrie went out on the porch. As soon as he closed the door, he yelled "cops" and started to run. Kelley also ran. Two other officers, who had been watching the house, gave chase, however, they were unable to catch Kelley and Guthrie. One of the officers went to Kelley's car, and spoke to Mary Van Dyke, Kelley's girlfriend, who was seated in the car. Van Dyke was sitting on a small bag of white powder. She denied any knowledge of the bag. The record does not reveal if the powder in the bag was tested or weighed.

The police began searching the area. Approximately 30 minutes later, one of the officers found a plastic bag behind a residence just off an alley through which Kelley and Guthrie ran. The bag contained two other plastic bags containing white powder. A state police laboratory technician determined that the bags contained approximately 12 grams of cocaine. None

of the officers saw Kelley with the bag or saw him drop anything as he was running away. In addition, none of the officers heard any conversation between Kelley and Guthrie.

Later that evening, police officers executed a search warrant at Kelley's apartment in Newburgh, Indiana. In the apartment, they found a grinder commonly used to mix cocaine, bags with white residue, many small plastic bags, and a bottle of Manitol, commonly used to dilute cocaine.

Additional facts will be given when necessary to our opinion.

## DECISION

I. *Sufficiency of the Evidence.*[1]

Kelley claims there was insufficient evidence to support his conviction. Specifically, he claims because there was no evidence to connect him with the cocaine found in the alley, the jury could not have reasonably inferred that he possessed it. He also claims that the small bag of white powder, assumed to be cocaine, found in the car and the drug paraphernalia found in his apartment do not support an inference that he possessed or sold more than three grams of cocaine.

Here, there was no evidence Kelley had physical possession of cocaine. However, the State is not required to show physical possession, only constructive possession. *Bergfeld v. State* (1988), Ind., 531 N.E.2d 486. Constructive possession is defined as "the intent and capability to maintain dominion and control over the illegal drugs." *Id.* at 490. The defendant's exclusive control of the premises where drugs are found will support an inference of intent to maintain dominion and control over the drugs. However, when the premises are not within the exclusive control of the defendant, the inference of intent must be supported by additional circumstances

---

1. Kelley claims in issue II that Guthrie's statement that Kelley was a source of cocaine was improperly admitted hearsay. In considering the sufficiency of the evidence, we consider all the evidence admitted at trial, including hearsay. However, even if we did not consider such statement we would still find the evidence sufficient.

showing the defendant had knowledge of the presence of the drugs. *Id.*

■ Here, the cocaine was found in the yard of a residence just off a public alley. Clearly, Kelley did not have exclusive control of the premises. However, there were additional circumstances which support an inference that Kelley dropped the cocaine in the alley. He fled from the police and ran through the alley. The officers testified no one entered the alley between the time Kelley and Guthrie ran through it and the time the cocaine was found. There was testimony that the bag was dry and could not have been in the alley more than a day. In addition, a bag of white powder was found in Kelley's car and paraphernalia associated with the distribution of cocaine was found in his apartment.

In *Ferguson v. State* (1985), Ind., 485 N.E.2d 888, the police executed a search warrant at an apartment in a hotel. The police knocked on the only entrance to the apartment. An officer stationed outside the apartment saw Ferguson, the defendant, run into the bathroom where he remained for three or four seconds before running back through the apartment and disappearing through a doorway. The police broke into the apartment through a wall, because the door was barricaded, and discovered that the doorway through which Ferguson disappeared led to a basement. There was no other door to the basement but there was an air duct leading to a room on the first floor. A tinfoil packet containing heroin was found on the floor of the basement. Although the basement was dusty, there was no dust on the packet. The dust was disturbed inside the air duct. Ferguson was found in another room of the hotel. His clothes were covered with the same type of dirt as that in air duct and the officer identified him as the man he had seen in the apartment. Our supreme court held that Ferguson's flight; his stop in the bathroom (apparently to dispose of drugs); and the presence of the clean packet of heroin in the otherwise dusty basement

was sufficient evidence to support a conviction of possession of heroin.

The facts in this case are similar to the facts in *Ferguson*. In both cases, drugs were found in an area not in the defendant's exclusive control, but through which the defendant had recently fled; the appearance of the packages containing the drugs was not inconsistent with their having been recently dropped; and there were additional circumstances tending to show the defendant's involvement with drugs.

In determining a question of sufficiency, this court does not reweigh the evidence or judge the credibility of witnesses. *Pearson v. State* (1988), Ind., 523 N.E.2d 747. There was sufficient evidence to support the verdict.

## II. *Guthrie's hearsay statement.*

At the time of trial, Guthrie was still a fugitive, and therefore was not available to testify. Prior to trial, the trial court granted a motion in limine as to any statements made by Guthrie. During direct examination of the officers, reference was made to Guthrie's statements to the officers and Kelley objected. These objections were sustained. However, during Kelley's cross examination of James Allison, one of the officers who was in the house with Guthrie, Kelley's counsel asked if Guthrie had said he would stay with the officer, and the officer answered "Yes".

Out of the presence of the jury, the State argued that Kelley had opened the door to all statements made by Guthrie. The trial court agreed and permitted testimony concerning everything that Guthrie told the officers. Kelley objected to this line of questioning as hearsay. The officer then testified that Guthrie told him he had been purchasing cocaine from Kelley for approximately a month and that he could contact Kelley by calling his beeper number to indicate he was ready to purchase cocaine.

Kelley argues these statements were inadmissible hearsay. The State concedes the statements were hearsay,[2] but argues the statements were admissible under the

---

**2.** "Hearsay is an out-of-court statement offered in court to prove the truth of the matter assert-ed within the statement". *Greene v. State* (1987), Ind., 515 N.E.2d 1376, 1381.

co-conspirator exception or because Kelley opened the door to such testimony.

■ Evidence of the statements or acts of parties to a conspiracy in furtherance of its objectives is admissible against all parties to the conspiracy. *Chinn v. State* (1987), Ind., 511 N.E.2d 1000. The State claims Kelley and Guthrie were parties to a conspiracy to sell cocaine, and focuses on the question of whether there was adequate evidence of a conspiracy to support the admission of the statements. *See id.* It is unnecessary to consider this question, because the statements fail to meet the second requirement of the test— that the statements were made in furtherance of the objectives of the conspiracy. Guthrie's statements to the police that Kelley was his source of cocaine, cannot be construed as furthering the conspiracy. On the contrary, such statements are directly opposed to the objectives of the conspiracy. Therefore, the statements do not fall within the co-conspirator exception to the rule.

■ The State also argues Kelley opened the door to this testimony by asking if Guthrie told the officer he would stay with him. The record reveals the following testimony of Officer Allison:

Q. In fact, the whole time Guthrie was with you, is it true you had your hand on his belt when you were outside the police station?

A. Virtually. I mean, I guess it would be possible.

Q. Is that a true statement?

A. I don't recall specifically having done that, but it's highly possible.

Q. Maybe when he was in the phone booth, I think you said, you told me you blocked him in the phone booth, right? Guthrie? But when you had him on the street, he was in handcuffs all the time, right?

A. Yes.

Q. And you had your hands on him, did you not?

A. I don't specifically, like I say, remember taking hold of his belt, but I was being careful that he didn't run off.

Mr. Lopp: The reason you kept the handcuffs on him and kept physical contact with him is that you said you were leery of him, is that right?

A. I was leery of him running away.

Q. You didn't trust him? Is that true, or false?

A. That's too vague.

Q. *Well, did you trust him to ... Did he say he would stay with you and help you?*

A. *Yes.*

Q. Did you trust him to stay with you?

A. No, not to stay with me.

Q. Is it also true that you believed Guthrie had an escape plan, is that right? That he instituted by getting himself out of the police station to make all these phone calls?

A. After the fact I came to that conclusion, yes.

(Our emphasis). (R. 212–213).

Specifically, the State claims that the emphasized testimony opened the door to all of Guthrie's statements.

■ Generally, a defendant may open the door to otherwise inadmissible evidence by injecting the issue into the trial himself. *See Gilliam v. State* (1978), 270 Ind. 71, 383 N.E.2d 297. Most, if not all, of the cases on this issue concern testimony relating to the defendant's character, and the issue arises during direct examination of the defendant or a defense witness. *See Id.; Baker v. State* (1978), 267 Ind. 643, 372 N.E.2d 1174. *Fultz v. State* (1982), Ind.App., 439 N.E.2d 659. Here, the State had injected the issue of Guthrie's credibility by eliciting testimony concerning his actions, and on at least two occasions referring to his statements.[3] Under these circumstances, Kelley had the right to question Guthrie's credibility. In addition, in *Gilliam, supra*, 383 N.E.2d at 301, our supreme court explained:

3. Kelley objected to these questions and the objections were sustained.

While an uncritical acceptance of the wording employed in cases under this rule would support the State's position, we believe that there is a further, often unstated requirement implicit in those cases: *the evidence relied upon to "open the door" must leave the trier of fact with a false or misleading impression of the facts related.* In most of these cases the accused or a defense witness has made a deceptively incomplete disclosure of his criminal record. (Our emphasis). *See also* Miller, Indiana Evidence, § 611.203 ("If a subject is incompletely touched upon in direct examination so as to leave the trier of fact with a false or misleading impression of the facts related, the direct examiner may be held to have 'opened the door' to the cross examiner to explore the subject fully, even if the matters so brought out on cross examination would otherwise have been inadmissible.")

Kelley's question and the officer's answer did not leave the jury with a false or misleading impression of the facts. Instead, it suggested Guthrie's unreliability, an inference borne out by Guthrie's flight. We fail to see how evidence of Guthrie's other uncorroborated statements could correct an impression which was not false or misleading initially. We note that the record does not reveal when Guthrie told Allison he would stay with him or whether this statement was made at the same time Guthrie stated that Kelley was his source of cocaine. The subject matter of the two statements are not related to each other and they may not have even been made at the same time. Guthrie's statement that he would stay with Allison is not so closely related to his other statements that its admission would open the door to his other statements. Therefore, we conclude the trial court improperly admitted evidence of Guthrie's statements.

Finally, we cannot say that the admission of this evidence was harmless error. Guthrie's statement that Kelley was his source of cocaine placed Kelley's actions and the discovery of the cocaine in the alley in a different context than if there had been no such statement. In this case all the evidence was circumstantial. For instance, the content of the telephone conversation did not reveal that a cocaine sale was to be made. Kelley and the informant met but there was no exchange and both men ran away. Kelley was never observed in possession of cocaine and the police did not see him drop anything in the alley—which was open to the public. Additionally, there was evidence the package could have been there for a day. Although, as we noted earlier, the jury had sufficient evidence to find Kelley guilty, it could also have concluded the State failed to prove beyond a reasonable doubt that Kelley was the one who dropped the cocaine in the alley. We will not speculate on the weight the jury may have given the evidence that Kelley was a "source" of cocaine in reaching its verdict. However, it was an additional piece of circumstantial evidence which may have tipped the balance in the minds of the jury. Therefore, we must reverse on this issue.

### III. *Evidence of Items Seized at Kelley's Apartment*

Kelley claims evidence of the items seized at his apartment was inadmissible because (1) it was evidence of a prior crime and (2) Kelley was not shown to have exclusive control of the apartment.

Although evidence of prior crimes is generally inadmissible to prove commission of the charged crime, such evidence is admissible if it tends to prove or disprove a fact in issue. *Mullins v. State* (1987), Ind., 504 N.E.2d 570. This case is similar to *Mullins* in which our supreme court explained:

Mullins' identification as a supplier of cocaine was at issue, and the paraphernalia seized tended to show that Mullins possessed the equipment necessary to process cocaine. The paraphernalia was therefore relevant to the crime charged and was admissible even though it also tended to suggest the additional crime of possession or use.

*Id.* at 573. Here, Kelley's identity as the source of the cocaine found in the alley was a fact in issue. The evidence of drug para-

phernalia used to process cocaine found in his apartment tended to show his ability to process cocaine.

 Kelley also claims he was insufficiently linked with the apartment to support an inference that he owned or knew of the paraphernalia found there. We disagree. The apartment manager testified Kelley signed the lease on the apartment, paid the rent in person, and told her that he would be living alone. In addition, after Kelley fled, Kelley's mother gave the manager a letter signed by Kelley giving his mother permission to enter the apartment. This evidence supports an inference that Kelley had exclusive control of the premises.

Although we conclude there was sufficient evidence to support the verdict, we cannot conclude that the jury's verdict was not influenced by the inadmissible evidence of Guthrie's statements. Therefore, we reverse and remand for further proceedings consistent with this opinion.

CONOVER, J., concurs.

CHEZEM, P.J., dissents with opinion.

CHEZEM, Presiding Judge, dissenting.

I respectfully dissent. The statements that Officer Allison attributed to Kelley were inadmissible hearsay. However, the admission of those statements was harmless. When reading the Officer's complete testimony, his lack of trust in Kelley permeates throughout. On cross-examination by Mr. Lopp, the defendant's attorney, the following exchange took place:

Q. Do you believe he had a purpose in getting outside of that police station?

A. It seemed that way to me.

Q. And that purpose was to escape, was that right?

A. It seemed that way to me.

Q. And that, in fact, is what he did, isn't it?

A. Yes.

Q. As soon as you took those handcuffs off, a second later he was out the door, wasn't he?

A. Correct.

Q. I mean, he didn't waste any time, he was gone?

A. That's true.

Q. And you haven't found him since, have you?

A. That's true.

Later, in the defendant's re-cross-examination by Mr. Lopp:

Q. So as soon as he hit the police station, he started talking, didn't he, and told you guys that he wanted to help you real bad, to get him out of trouble. Isn't that about what occurred?

A. Basically speaking, yes.

Q. I mean, this guy became a volcano, right? I mean, he was throwing so many words at you so fast, it was . . .

A. Well, as the statement reflects, initially all he wanted to give was first names, and he started off by not being as cooperative as what I would have liked to have seen, and that's reflected in the first couple of pages of his statement.

Q. And he ended up nonstop?

A. He ended up providing quite a bit of information, yes.

Q. And it was obvious to you that his reason was to get himself out of a real bad jam he was in, isn't that right?

A. I would say that would have been his motivation, yes.

Q. And you didn't trust him enough, when you let him out of the police station, to take his handcuffs off of him or to even virtually turn loose of him, did you?

A. That's correct.

The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to

the conviction. *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 22.