Jeffrey A. SMALL, Appellant–Defendant Below,

v.

STATE of Indiana, Appellee–Plaintiff Below.

No. 20A03–9209–CR–283.

Court of Appeals of Indiana, Third District.

April 18, 1994.

Transfer Denied June 24, 1994.

Susan K. Carpenter, Public Defender, Gregory L. Lewis, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Jeffrey Small was convicted by a jury of battery on a police officer, a class D felony;[1] possession of cocaine, a class D felony;[2] fleeing a police officer, a class A misdemeanor;[3] and resisting law enforcement, a class A misdemeanor.[4] He presents seven issues for our review which we consolidate into six and restate as follows:

    I.  Whether the trial court erred in admitting evidence obtained after the police stopped Small.

    II.  Whether there was sufficient evidence to support Small's convictions.

    III.  Whether Small's convictions for battery and resisting law enforcement are defective because they were submitted to the jury under alternate theories.

    IV.  Whether the trial court erred in denying Small's motion for mistrial.

    V.  Whether the trial court erred in limiting the scope of Small's cross-examination.

    VI.  Whether the trial court erred in quashing Small's subpoena duces tecum for production of police documents.

We affirm.

The facts most favorable to the verdict reveal that on January 22, 1992, Officers Swygart and Speas were on routine patrol in a marked police car when they observed a vehicle driven by Small traveling east on Garfield Street. After the officers turned east onto Garfield behind Small, they observed Small's vehicle slow down abruptly, and rapidly pull off the side of the road in a very jerky fashion, without using a turn signal. The officers then activated the red and blue police lights on their vehicle and pulled behind Small.

Officer Speas approached the driver's window and asked Small to produce his driver's license and registration, and to step from the vehicle. Small stepped from the vehicle and said his license and registration were in the glove compartment. He then walked around the rear of his vehicle to the passenger side, opened the door, bent down and looked inside. Small then started back around the rear of the vehicle and suddenly started running away from the scene, dropping things as he ran. Officer Swygart pursued Small on foot while shouting several times for Small to stop. Although Small looked back several times, he continued to run.

Swygart pursued Small for three blocks, until someone driving a Ford Taurus stopped, picked up Small, and drove away. Swygart then walked back to where Small's vehicle was parked and discovered a plastic baggy, containing what later turned out to be cocaine, laying on the ground approximately five feet behind Small's vehicle.

Meanwhile, Officer Speas, driving the patrol car, had assumed the pursuit of Small. Speas had been pursuing the Ford Taurus for several blocks when it stopped and all of the occupants exited and fled on foot. Speas followed Small into an alley where he advised Small he was under arrest and instructed him to place his hands behind his back. Small laughed and said he was not going to jail. Officer Speas grabbed Small's arm and Small pulled away and started to walk away. Speas then grabbed Small by the back of the jacket and Small swung around and struck Speas in the chest with his fist.

Small started to run again, but Speas caught him and the two men began wrestling in the street. Soon, a red Audi pulled up and the driver opened the door and yelled for Small to get inside. When Small attempted to get into the Audi, Speas jumped in the vehicle on top of him. The red Audi started

---

**1.** IND.CODE 35–42–2–1 (1993).

**2.** IND.CODE 35–48–4–6 (1993).

**3.** IND.CODE 35–44–3–3 (1993).

**4.** IC 35–44–3–3.

to drive away, with both Small and Officer Speas "still half-way hanging out of the car", when another police vehicle arrived and offered assistance to Speas. Record, p. 199. The officers and Small continued to struggle until Small was finally handcuffed. It was only after Small was subdued that Speas noticed his own hand was bleeding and was swollen.

## I.

### *Admissibility of Evidence*

■ First, Small argues the trial court erred in denying his motion to suppress the evidence obtained by the police because there was no probable cause justifying the initial stop. The trial court has broad discretion in ruling on the admissibility of evidence. We will disturb its ruling only upon a showing of abuse of that discretion. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068, 1073, *reh. denied.*

■ Officers may stop a vehicle when they observe minor traffic violations. *Black v. State* (1993), Ind.App., 621 N.E.2d 368, 370. IND.CODE 9–21–8–24 (1993) provides that

A person may not:

(1) slow down or stop a vehicle;

(2) turn a vehicle from a direct course upon a highway; or

(3) change from one (1) traffic lane to another; unless the movement can be made with reasonable safety. Before making a movement described in this section, a person shall give a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement and give an appropriate stop or turn signal . . . if any other vehicle may be affected by the movement.

At trial, the officers testified that they stopped Small because he made a "very rapid and jerky turn to the side of the road" without activating his turn signal. Record, p.

5. Small challenges the officer's testimony regarding the distance between the two vehicles at the time that Small neglected to signal his turn by pointing out an inconsistency with the officer's deposition. However, this inconsistency was re-

137. Officer Swygart also testified that Small's vehicle was only one and one-half car lengths in front of the police car when Small attempted this maneuver.[5] The evidence supports the conclusion that Small committed a traffic violation. The trial court did not err in denying Small's motion to suppress.

## II.

### *Sufficiency of Evidence*

Next, Small contends there was insufficient evidence to support his convictions for possession of cocaine and resisting law enforcement. Our test for sufficiency of the evidence requires that we neither weigh the evidence nor resolve questions of credibility. We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Jones v. State* (1992), Ind., 589 N.E.2d 241, 242.

■ The offense of resisting law enforcement is committed where a person "knowingly or intentionally forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is lawfully engaged in the execution of his duties as an officer." I.C. 35–44–3–3. The amended charging information in the present cause alleged as follows:

Jeffrey A. Small did then and there unlawfully, knowingly, and forcibly pull away from and refuse to place his hands behind his back while Patrolman R. Speas, a law enforcement officer employed by the Elkhart City Police Department was lawfully engaged in his duties as a law enforcement officer. . . .

Record, p. 29. Small argues his conviction for this offense cannot stand because there is insufficient evidence that he forcibly resisted.

In analyzing exactly what constitutes force as applied in the statute at issue our supreme court reviewed the definitions of "force" in several dictionaries and opined that

vealed to the jury on cross-examination. We will not invade the province of the jury by reweighing the evidence and judging the credibility of witnesses. *Black, supra.*

The common denominators of these definitions are the use of strength, power or violence, applied to one's actions, in order to accomplish one's ends. We believe that one 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties.

*Spangler v. State* (1993), Ind., 607 N.E.2d 720, 723.

In *Spangler*, the court held there was insufficient evidence to support defendant's conviction for resisting law enforcement where he repeatedly and firmly refused to accept service of process from law enforcement officials, and then walked away. Because there was no evidence that Spangler made any movement nor used strength, power or violence to accomplish his objective, his conviction was reversed. *Id.* at 724. *See also Braster v. State* (1992), Ind.App., 596 N.E.2d 278, 280, *trans. denied* (conviction reversed where the only evidence of the offense of resisting law enforcement was defendant's failure to obey the officer's demand to lie on the ground. "While defendant's failure to obey [the officer's instructions] is a definite resistance, obstruction, and interference with law enforcement, there was no force involved on defendant's part.")

We believe that *Spangler* and *Braster* are distinguishable from the case at bar. Here, Small necessarily engaged in force in order to pull away from Officer Speas' grasp. Small did not merely refuse to be placed under arrest or simply walk away; rather, he used power and strength to evade the officer's attempt to effectuate a lawful arrest. The evidence was sufficient to support his conviction for resisting law enforcement.

■ Small also challenges the sufficiency of the evidence in support of his conviction for possession of cocaine. He asserts there was no evidence that he had physical or constructive possession of the cocaine found on the ground near his vehicle. "Constructive possession is defined as the intent and capability to maintain dominion and control over the illegal drugs." *Kelley v. State* (1990), Ind.App., 555 N.E.2d 1341, 1343. An inference of intent may be established by showing that the defendant had knowledge of the presence of the drugs. *Id.* at 1343–44.

In *Kelley*, the Fourth District held there was sufficient evidence to support the possession of cocaine conviction where the cocaine was recovered from an alley through which defendant ran when he fled from police. The court pointed to the following evidence from which the required inference of intent was established: (1) drugs were found in an area through which the defendant had recently fled; (2) the bag of cocaine was dry and could not have been in the alley more than a day; (3) the officers testified that no one entered the alley between the time defendant ran through it and when the cocaine was found; and (4) illegal drugs and drug paraphernalia were later found in defendant's car and apartment.

Here, the following evidence tended to show that Small had possession of the cocaine. Small immediately fled from the police even though he had been stopped for a minor traffic violation. *See Menefee v. State* (1987), Ind., 514 N.E.2d 1057, 1059 (subsequent flight may be considered circumstantial evidence of guilt). The cocaine was found behind Small's car, an area over which Small had run as he fled from the police. The officers observed Small drop things out of his coat as he was running. Within three or four minutes from leaving the area in which Small's vehicle was parked, Officer Swygart returned and found the cocaine. From this evidence, it was reasonable for the jury to infer that Small had possessed the cocaine.

### III.

*Alternate Theories*

■ Next, Small argues the trial court committed reversible error when it submitted to the jury alternate theories for the offenses of battery and resisting law enforcement. Instruction number 5 included the substance of the charging informations. It informed the jury that Small's battery charge was based on his feloniously touching, beating and striking Officer Speas, which "resulted in bodily injury, to-wit: bruised ribs, a

swollen hand, and extreme pain to the said patrolman." Record, p. 60.

Small's argument seems to be that this instruction, along with the closing arguments of the prosecutor,[6] constitutes the submission of alternate theories of guilt to the jury. Thus, because the jury returned a general verdict, and one of the theories of guilt was not bona fide, his conviction cannot stand. We find his argument to be without merit.

Neither the instruction nor the prosecutor's statements informed the jury that it could return a verdict of guilty if it found that Small caused *either* the injury to the officer's ribs *or* the injury to the officer's hand.[7] Similarly, the jury was not instructed, as Small alleges, that it could find Small guilty of resisting law enforcement if it found that he *either* refused to place his hands behind his back *or* he pulled away when Officer Speas grabbed him. Because the theories of guilt were not presented in the alternative, there was no reversible error here.

## IV.

### *Mistrial*

During direct examination, Small's counsel asked him whether he had been convicted of manslaughter. Small admitted that he had been. On cross-examination, the prosecutor asked Small, "Isn't it also true you had a conviction for resisting arrest back in September...." Record, p. 245. Small's counsel objected, stating, "I don't believe that's one of the convictions that can come in and I must move for mistrial." In sustaining Small's objection, the trial judge stated that Small's answer during direct examination "does not lay open the door to these other

convictions in my opinion." Record, p. 246. The trial court then admonished the jury to disregard the prosecutor's question and denied Small's motion for a mistrial.

Small contends the trial court committed reversible error when it denied his motion for mistrial and, in fact, compounded the error by informing the jury that Small had other convictions that had not yet been revealed. The trial court has discretion in determining whether to grant a mistrial, and its decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Schlomer v. State* (1991), Ind., 580 N.E.2d 950, 955. To prevail on appeal, appellant must show that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected. *Id.* However, mistrial is an extreme remedy in a criminal case which should be granted only when nothing else can rectify the situation. *Id.*

The State argues that Small "opened the door" to questions about other criminal convictions when, on direct examination, he tendered evidence of his conviction for manslaughter, an offense not within the list of crimes which are admissible for impeachment purposes. *See Fultz v. State* (1982), Ind. App., 439 N.E.2d 659, 661, *trans. denied.* Small responds by urging us to include manslaughter within the list of crimes which are admissible under *Ashton v. State* (1972), 258 Ind. 51, 279 N.E.2d 210. Even if we were to expand the list of *Ashton* crimes to include the offense of manslaughter, there would be no reversible error here. ·

---

6. Small relies on the following statement made by the prosecutor in closing argument:

 [T]he resisting continued even after the car came to a stop. Officer Speas testified he's trying to get this guy handcuffed, telling him to place his hands behind his back. And even Officer Hammel comes around and tells the driver to stay where he is and they both are wrestling with Jeffrey Small, trying to get handcuffs on him and he continues to resist them. He testifies he even had to strike him on several occasions, tell him to stop resisting. He continued to resist until finally he stopped

resisting, and at that point the handcuffs were placed on him and he was placed under arrest. Record, p. 277–78.

7. As a sub-issue, Small contends the evidence is insufficient to support the jury's determination that Small caused the injury to Officer Speas' hand because Speas testified that he did not know exactly when the injury to his hand occurred. However, Speas also testified that he sustained the injury to his hand sometime during his struggle with Small. The evidence was sufficient to support the conclusion that Speas' injury occurred as a result of a touching by Small.

In determining whether a mistrial is warranted, we consider a number of factors to determine whether the circumstances placed the defendant in grave peril. *See Garcia v. State* (1987), Ind.App., 509 N.E.2d 888, 890, n. 5. Of particular relevance in the case at bar is (1) the degree of materiality of the testimony; (2) the other evidence of guilt; (3) whether there had been deliberate action by the prosecutor to present the matter to the jury; (4) whether the matter was in part brought out by action of the defendant or his counsel; and (5) whether the objectionable testimony was repeated. *See id.*

Here, the objectionable question was material because it involved a previous conviction for resisting arrest, an offense for which Small was currently being tried. However, the record shows that the prosecutor thought the question was permissible because Small's direct examination had revealed a conviction for a non-*Ashton* crime. The prosecutor did not deliberately reveal inadmissible evidence to the jury. Too, when the trial court announced its ruling with respect to the objectionable question, the prosecutor made no further attempts to admit evidence of other crimes for which Small had been convicted. Finally, the eye-witness testimony of the two officers constituted substantial evidence of Small's guilt. We conclude the trial court's admonishment was sufficient to cure any error.

Similarly, the trial court's remark about "these other convictions" does not amount to reversible error. We find no significant difference between this statement made by the trial court and the statement made by Small's counsel that he did not believe the resisting arrest offense was "one of the convictions that can come in." Record, p. 245. Inasmuch as these two remarks were made while the attorneys were discussing *Ashton* offenses generally, the jury would not have interpreted them as evidence that Small had other convictions.

## V.

### Cross–Examination

Next, Small asserts the trial court erred by restricting the scope of his cross-examination of Officer Swygart. The trial court has discretion to determine the scope of cross examination, and only a clear abuse of that discretion warrants reversal. *Coates v. State* (1989), Ind., 534 N.E.2d 1087, 1095.

During re-direct examination, Officer Swygart testified that he had never found drugs on the street where Small's vehicle was stopped. On re-cross, the following colloquy occurred:

Q: And you said that you never found any drugs down there on Garfield?

A: I never have, no.

Q: Do you know that a gentleman by the name of Dale McGhee was arrested who lives across the street from there and has charges pending for drug sale in Superior II?

MR. WICKS: Objection. That is irrelevant.

THE COURT: Sustained.

\* \* \* \* \* \*

Q: Do you know Phil McGhee?

MR. WICKS: Objection to any information about Phil McGhee.

THE COURT: Sustained.

Record, pp. 169–70.

Small argues the trial court's rulings deprived him of his constitutional right of confrontation. We do not agree. A review of the record reveals that the following testimony was given earlier by Officer Swygart during cross-examination:

Q: Is Washington Gardens an area where you folks say there is high incidence of drug usage, drug possession?

A: In Washington Gardens, yes.

Q: How far is Washington Gardens from the area where the car was stopped, about a block?

A: The southern boundary is approximately a block away.

\* \* \* \* \* \*

Q: So this cocaine you found in the middle of the street was in an area of a block of what you and the department determined to be an area where drugs are prevalent; right?

A: Yes.

Record, pp. 162–63.

 Errors in the admission or exclusion of evidence that do not affect the substantial rights of the parties are to be disregarded as harmless error. *Timmons v. State* (1992), Ind., 584 N.E.2d 1108, 1112. Because the substance of what Small was attempting to show on re-cross examination (i.e. that illegal drugs were prevalent in the immediate area) was essentially demonstrated with other evidence, the error, if any, committed by the trial court in limiting the scope of cross-examination was harmless. *See Koke v. State* (1986), Ind.App., 498 N.E.2d 1326, 1330, *trans. denied.*

## VI.

### *Discovery Order*

 Lastly, Small argues the trial court erred when it granted the State's motion to quash Small's subpoena duces tecum. The subpoena duces tecum directed the Chief of Police of the Elkhart Police Department to produce "all records and information contained by the [police department] concerning arrests, stops, inquiries, searches of Defendant's home, car(s), and any other police encounters concerning Jeffrey Small." Record, p. 22. Decisions regarding discovery matters, including rulings on discovery violations, is within the broad discretion of the trial court as part of its inherent power to guide and control the proceedings. *Norris v. State* (1987), Ind., 516 N.E.2d 1068, 1070.

Ind. Criminal Rule 2(1) states that a court may quash or modify a subpoena duces tecum if it is unreasonable or oppressive. Here, the subpoena duces tecum was dated by the court clerk on March 3, 1992. It directed the Chief of Police to appear with the requested documents at a hearing scheduled for March 5, 1992. The Chief of Police filed a motion to quash on March 4, 1992 in which he stated that Small's request was overly broad, it did not contain a time frame for records requested, and it did not provide the police with sufficient time in which to respond or comply. Too, the record indicates that Small had an extensive history of encounters with the police in Elkhart. From this evidence it was reasonable for the trial court to conclude that Small's subpoena duces tecum was unreasonable and oppressive. The trial court did not abuse its discretion.

Affirmed.

GARRARD and BAKER, JJ., concur.