## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2020, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tracey Herron,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

August 31, 2020

Court of Appeals Case No.
19A-CR-3019

Appeal from the Marion Superior Court

The Honorable Grant W. Hawkins, Judge

Trial Court Cause No.
49G05-1803-F1-9772

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Tracey Herron was convicted of three counts of Class A felony child molesting, one count of Level 1 felony child molesting, and one count of Level 4 sexual misconduct with a minor. Herron appeals, presenting the sole issue of whether the trial court abused its discretion by admitting evidence without proper authentication. Concluding that the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

[2] Herron is married to Shante Herron. The victim, B.O.,[1] is Shante's first cousin. B.O. often spent the night at Herron's home beginning when she was around ten years old. From the time B.O. was eleven until she was fourteen Herron subjected B.O. to multiple sexual acts. At the age of fifteen, B.O. decided to tell another cousin about what Herron had done to her.

[3] Subsequently, B.O. decided that she needed proof of what Herron had done, so she contacted Herron on Facebook Messenger. B.O. had communicated with Herron like this in the past. In the Facebook messages, B.O. and Herron discussed previous sexual encounters between them. B.O. took screenshots of the conversation. After the Messenger conversation with Herron, B.O. told her

---

[1] The child's official initials are R.O., however B.O. was used during the trial due to a nickname because the child and her mother share a first name. We will likewise refer to the victim as B.O.

mother, brother, and sister what Herron had done to her. B.O.'s mother then contacted the police.

[4] On March 22, 2018, the State charged Herron with multiple counts of child molesting and two counts of sexual misconduct with a minor. Herron waived his right to a jury trial. At the bench trial, B.O. testified about several times that Herron molested her while she was staying at his house. When explaining how she reached out to Herron for "proof," she stated that she decided to text him on Facebook Messenger because she and Herron had communicated through Facebook Messenger in the past. The State offered Exhibit 1, which B.O. identified as a true and accurate picture of what she knew to be Herron's Facebook profile page. The Facebook account is in the name "Tc Herron." Index of Exhibits, Volume 1 at 6. Exhibit 1 was admitted without objection. The State then moved to admit State's Exhibit 3, screenshots of Facebook Messenger messages with "Tc Herron." *Id.* at 10-13. B.O. testified that she took the screenshots of the messages at issue and that they were the entirety of the conversation she initiated with Herron. Herron objected on the grounds that the "Tc Herron" Facebook account with which B.O. was communicating had not been authenticated and that the State could not prove that the messages were sent by him. The trial court took the objection under advisement and did not admit the exhibit during B.O.'s testimony.

[5] The State again moved to admit Exhibit 3 during the testimony of Detective Justin Hickman, a child abuse detective with the Indianapolis Metropolitan Police Department who received the police report made by B.O.'s mother. But

first, Detective Hickman identified State's Exhibit 2 as a screen shot of a photograph of Herron that was in the photos section of the Tc Herron Facebook account. Exhibit 2 was admitted without objection. Detective Hickman then testified that State's Exhibit 3 appeared to be a Facebook Messenger conversation with the Tc Herron Facebook account. When the State moved to admit Exhibit 3, Herron conceded that the State had shown the Facebook account belonged to him; therefore his only remaining objection to State's Exhibit 3 was that the State had not proven the messages were sent by him. The State presented evidence that Herron's "Tc Herron" Facebook account was linked to his Facebook Messenger account and that Facebook Messenger allows for private conversations between people to occur. State's Exhibit 3 also indicated that B.O. and Tc Herron were "Friends" on Facebook. Finding that State's Exhibit 3 was sufficiently authenticated by testimony and by State's Exhibits 1 and 2, the trial court admitted Exhibit 3 into evidence over objection.

[6] Herron was convicted of three counts of Class A felony child molesting, one count of Level 1 felony child molesting, and one count of Level 4 sexual misconduct with a minor and ordered to serve an aggregate sentence of seventy years. Herron now appeals.

# Discussion and Decision

# I. Standard of Review

The trial court has broad discretion in ruling on the admissibility of evidence. *Small v. State*, 632 N.E.2d 779, 782 (Ind. Ct. App. 1994), *trans. denied*. We will disturb its ruling only upon a showing of abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Baxter v. State*, 734 N.E.2d 642, 645 (Ind. Ct. App. 2000).

# II. Admission of Evidence

Herron argues that Exhibit 3, containing screenshots of Facebook Messenger messages, was not properly authenticated. Specifically, he contends that there was no evidence that Herron personally sent the messages. Before evidence can be admitted, the proponent of the evidence must show that the evidence has been authenticated. *Hape v. State*, 903 N.E.2d 977, 989 (Ind. Ct. App. 2009), *trans. denied*. The Facebook messages at issue fall within the purview of Indiana Rule of Evidence 901(a). *See Wilson v. State,* 30 N.E.3d 1264, 1268 (Ind. Ct. App. 2015) (stating, with respect to Twitter messages, "[l]etters and words set down by electronic recording and other forms of data compilation are included within Rule 901(a)"), *trans. denied*.

Indiana Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent

claims it is." Absolute proof of authenticity is not required. *Fry v. State*, 885 N.E.2d 742, 748 (Ind. Ct. App. 2008), *trans. denied*. All that is required is evidence establishing "a reasonable probability that an item is what it is claimed to be[.]" *Thomas v. State*, 734 N.E.2d 572, 573 (Ind. 2000). Additionally, authentication of an exhibit can be established by either direct or circumstantial evidence. *Newman v. State*, 675 N.E.2d 1109, 1111 (Ind. Ct. App. 1996).

[10] Indiana Evidence Rule 901(b) provides examples of evidence that satisfies the authentication requirement including "(1) . . . [t]estimony that an item is what it is claimed to be, by a witness with knowledge" and "(4) . . . [t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Ind. Evidence Rule 901(b)(1), (b)(4). Indiana Rule of Evidence 901(b)(4) uses language identical to that of Federal Rule of Evidence 901(b)(4) which is "one of the most frequently used means to authenticate electronic data, including text messages and emails." *M.T.V. v. State*, 66 N.E.3d 960, 963 (Ind. Ct. App. 2016) (quoting *Wilson*, 30 N.E.3d at 1268), *trans. denied*. Our courts have likewise analyzed the authentication of electronic data via the requirements of Indiana Rule 901(b)(4).

[11] For instance, in *Wilson* we addressed whether messages sent through a Twitter social media account had been properly authenticated and therefore, properly admitted. 30 N.E.3d at 1268. A witness testified that she often communicated with the defendant on Twitter and had general knowledge of the account. The account records included pictures depicting the defendant holding guns that matched the description of those used in the crime with which the defendant

was charged. Moreover, there was testimony that the defendant was affiliated with two gangs, and the account frequently used terms referring to those gangs, showing that the author of the messages was affiliated with them. We concluded that "taken together, the witness testimony identifying the Twitter account as belonging to [the defendant] and the content posted on the account, including pictures and gang references, are more than sufficient to authenticate the Twitter posts as being authored by [the defendant]." *Id.* at 1269. Therefore, we held the trial court did not abuse its discretion by admitting the posts.

[12] Subsequently, in *Richardson v. State,* we addressed the converse: whether the trial court properly excluded evidence of a Facebook message between a murder victim and a third party as not properly authenticated. 79 N.E.3d 958, 961 (Ind. Ct. App. 2017), *trans. denied*. The defendant was accused of murder after an altercation that resulted in the victim being shot and killed. When police arrived at the scene, they found a cell phone on the victim's body. During the police investigation, a Facebook profile was retrieved from the cell phone. The name on the Facebook account did not match the name of the victim; however, a conversation between the Facebook account and a third party a couple of days prior to the shooting was discovered. The defendant moved to have the Facebook messages admitted because the conversation, if the Facebook account could be shown to be the victim's, suggested that the owner of the account needed help to rob an unspecified person. The police detective who discovered the messages testified at trial that he had "no idea

who made the statement or who composed the message." *Id.* at 964. Therefore, the trial court refused to admit the messages.

[13] This court found that, unlike the evidence offered in *Wilson,* the defendant in *Richardson* did not present "any evidence describing distinctive characteristics that could connect the particular statement" to the victim, "nor did he present any other indicia of reliability establishing" the victim as the author of the contested statement. *Richardson*, 79 N.E.3d at 963-64. Therefore, the trial court did not err in excluding the Facebook messages as not properly authenticated.

[14] Herron argues that there is no evidence he personally sent the Facebook messages and that someone else could have sent the messages from the Facebook account. Citing *Richardson*, Herron contends that "a [F]acebook account can be accessed from any cell phone or computer, by any person." Brief of Appellant at 11.

[15] Herron conceded that the State had shown the Tc Herron Facebook account belonged to him. Detective Hickman testified that State's Exhibit 3 appeared to be an authentic Facebook Messenger conversation with the Tc Herron account. B.O. identified Herron's Facebook page profile and testified that Exhibit 3 showed a conversation between her and Herron. B.O. also testified that they had communicated in this manner previously. Exhibit 3 indicated that B.O. and Tc Herron were "Friends" on Facebook at the time of the communication. Further, both parties to the Facebook messages specifically discussed the sexual encounters B.O. testified Herron had subjected her to.

[16]   We conclude that the State established the requisite reasonable probability that the Facebook messages were authored by Herron. Specifically, witness testimony and the distinctive characteristics of the exhibit were more than sufficient to authenticate the Facebook messages as being authored by Herron. Accordingly, the trial court did not abuse its discretion when it admitted the screenshots of the Facebook messages.

# Conclusion

[17]   The trial court did not abuse its discretion by admitting screenshots of Herron's Facebook messages.

[18]   Affirmed.

May, J., and Vaidik, J., concur.